**Jan C. GROSSMAN, Petitioner,**

v.

**STATE BOARD OF PSYCHOLOGY, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 17, 2003.

Decided June 2, 2003.

Jan C. Grossman, petitioner, pro se.

Judith Pachter Schulder, Harrisburg, for respondent.

Susan M. Shanaman, Harrisburg, for amicus curiae, The Pennsylvania Psychological.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

Jan C. Grossman, Ph.D. (Dr. Grossman) petitions for review of the order of the State Board of Psychology (Board) that reprimanded Dr. Grossman and assessed a $1,000.00 civil penalty.

The "M" family is composed of B.P., mother, D.M., father, and L.M., a daughter. B.P. and D.M. separated and ultimately divorced in 1994. At the time of the separation, B.P. and D.M. shared legal custody of L.M. who was approximately four years old. The Court of Common Pleas of Montgomery County (common pleas court) appointed Margaret Cook, Ph.D. (Dr. Cook), to perform a custody evaluation of the M family and to make a recommendation with respect to L.M.'s custody. Dr. Cook recommended that joint legal custody continue.

B.P.'s attorney, Lori Shemtob (Attorney Shemtob), hired Dr. Grossman to review Dr. Cook's report. Dr. Grossman asked Attorney Shemtob to obtain D.M.'s consent before Dr. Grossman evaluated L.M. in July 1996. Attorney Shemtob attempted to obtain D.M.'s consent through correspondence with his attorney. Because D.M.'s attorney was in the process of ending their attorney-client relationship, D.M. did not receive the letters for some time.

During the first week of July, Dr. Grossman met with B.P. and her then husband, Michael (M.P.), for approximately one hour. On July 9, 1996, Dr. Grossman met with L.M., B.P. and M.P. After a brief introduction, Dr. Grossman met with L.M. alone for approximately one hour. Dr. Grossman's initial meeting with L.M. was to determine whether L.M. could verbally assess her needs, communicate realistically, describe her two home environments and to ultimately evaluate Dr. Cook's determination that L.M. was not a reliable witness. B.P. expressed her concern to Dr. Grossman that D.M. was not bathing L.M. when she stayed with him. B.P. arranged with Dr. Grossman to meet in a restaurant after B.P. picked up L.M. on July 14, 1996.

Though Dr. Grossman had requested Attorney Shemtob to obtain D.M.'s consent before he met with L.M., he did not confirm with Attorney Shemtob whether D.M. consented. He also did not contact D.M. prior to the July 9, 1996, meeting. On July 10, 1996, D.M. learned from his

daughter of her meeting with Dr. Grossman the previous day. On July 12, 1996, D.M. telephoned Dr. Grossman and told him not to meet with L.M. again. D.M. sent a letter by fax and by certified mail to Dr. Grossman and reiterated his objection to Dr. Grossman. During the telephone conversation, Dr. Grossman failed to inform D.M. that he was scheduled to meet with L.M. on July 14, 1996. Dr. Grossman did not receive the fax until Monday, July 15, 1996, when he returned to his office.

On July 14, 1996, Dr. Grossman met L.M., B.P., and M.P. at a restaurant. After first meeting together, B.P. and M.P. moved to another table as far away from Dr. Grossman and L.M. as possible. To determine whether D.M. had cared for L.M. properly, Dr. Grossman picked up some of L.M.'s hair and also lifted her arms to smell L.M.'s hair and armpits.

After the common pleas court became aware that Dr. Grossman met with L.M. without D.M.'s consent, the common pleas court ordered that neither parent could take L.M. to another professional unless the other parent consented. Dr. Grossman did not prepare a formal report but provided "feedback" to Attorney Shemtob.

Dr. Grossman testified at the custody trial. Dr. Grossman testified that he asked Attorney Shemtob to obtain the cooperation of all parties. Notes of Testimony, January 28, 1997, (N.T. 1/28/97) at 451[1]. Dr. Grossman also testified that in his telephone conversation with D.M., D.M. "did not forbid or, in any way, stop me from seeing his daughter." N.T. 1/28/97 at 468–469. Dr. Grossman described L.M.'s condition when he met her at the restaurant as having matted hair with a slight smell about her. N.T. 1/28/97 at 470. Dr. Grossman criticized Dr. Cooke's evaluation because there was no

meeting with the parents together and no interview of L.M. N.T. 1/28/97 at 478–481. Dr. Grossman stated that the fact that D.M. sold insurance could present a child care problem because he might have to contact customers at night. N.T. 1/29/97 at 505–506; Reproduced Record (R.R.) at 372a–373a. Dr. Grossman concluded that Dr. Cook did not collect sufficient data to draw the conclusions in her report. N.T. 1/29/97 at 515. On cross-examination, Dr. Grossman admitted that while meeting with B.P. and M.P., he made a note that D.M. consumed 750 milligrams per day of caffeine. N.T. 1/29/97 at 550; R.R. at 386a.

On or about February 14, 2000, the Commonwealth of Pennsylvania Bureau of Professional and Occupational Affairs (Commonwealth) filed a Notice and Order to Show Cause why the State Board of Psychology (Board) should not suspend, revoke or otherwise restrict Dr. Grossman's license, certificate, registration or permit, or impose a civil penalty. Count One of the Order to Show Cause alleged:

9. On or about July 9, 1996, Respondent [Dr. Grossman] met with L.M., then approximately 5½ years old, for approximately one hour in his office at the request of L.M.'s mother, B.P. and without the knowledge or consent of D.M.

10. By letter dated July 12, 1996, D.M. demanded that Respondent [Dr. Grossman] discontinue any meetings or evaluations with his daughter without his consent and advised Respondent [Dr. Grossman] that he did not have consent to evaluate his daughter, L.M.

11. On or about July 14, 1996, which was a Sunday evening, Respondent [Dr. Grossman] again met with L.M. in a Chinese restaurant at the request of

**1.** The Reproduced Record does not contain the complete notes of testimony.

B.P. without the knowledge or consent of D.M.

12. At the time B.P. requested that Respondent [Dr. Grossman] see her daughter, she was in the midst of a custody battle with L.M.'s father, D.M.

13. During the course of the meetings on July 9 and 14, 1996, Respondent [Dr. Grossman] not only spoke to L.M. but also viewed her physical appearance by holding her hands and smelling her because B.P. had alleged that D.M. failed to bathe L.M. and/or engage in appropriate hygiene care with respect to L.M.

14. On July 16, 1996 in the Court of Common Pleas of Montgomery County, Respondent [Dr. Grossman] provided expert testimony on behalf of B.P. in the custody matter of L.M.

15. Respondent [Dr. Grossman], who is also a licensed practicing attorney, never consulted with D.M. or his attorney with respect to consent to meet with, treat and/or evaluate L.M.

16. Based upon the foregoing Factual Allegations, the Board is authorized to suspend or revoke, or otherwise restrict Respondent's [Dr. Grossman] license, or impose a civil penalty under 63 P.S. § 1208(a)(9)[2] as well as the Board's Regulations at 49 Pa.Code § 41.61, Ethical Principle 3(e)[3], because Respondent [Dr. Grossman] has deviated from the American Psychological Association standards and guidelines when he conducted a psychological evaluation and/or met with L.M. without the knowledge or consent of her father, D.M.

Notice and Order to Show Cause, February 14, 2000, Paragraphs 9–16 at 2–3; R.R. at 3a–4a. In Count II, the Commonwealth alleged that Dr. Grossman violated Section 8(a)(11) of the Act, 63 P.S. § 1208(a)(11)[4], because his psychological evaluation and/or meeting with L.M. with respect to a custody proceeding without the knowledge or consent of D.M., constituted unprofessional conduct.

On March 17, 2000, Dr. Grossman moved to dismiss the order to show cause because the order failed to set forth the material facts and/or statute upon which

2. Section 8(a)(9) of the Professional Psychologists Practice Act (Act), Act of March 23, 1972, P.L. 136, *as amended*, 63 P.S. § 1208(a)(9), provides:

(a) The board may refuse to issue a license or may suspend, revoke, limit or restrict a licensee or reprimand a licensee for any of the following reasons:

. . . .

(9) Violating a lawful regulation promulgated by the board, including, but not limited to, ethical regulations, or violating a lawful order of the board previously entered in a disciplinary proceeding.

3. Principle 3(e) of the Board's Code of Ethics (Principle 3(e)), 49 Pa.Code § 41.61(3)(e), provides:

As practitioners and researchers, psychologists act in accord with American Psychological Association standards and guidelines related to practice and to the conduct of research with human beings and animals. In the ordinary course of events, psychologists adhere to relevant governmental laws and institutional regulations. Whenever the laws, regulations or standards are in conflict, psychologists make known their commitment to a resolution of the conflict. Both practitioners and researchers are concerned with the development of laws and regulations which best serve the public interest.

4. Section 8(a)(11) of the Act, 63 P.S. § 1208(a)(11), provides:

(a) The board may refuse to issue a license or may suspend, revoke, limit or restrict a licensee or reprimand a licensee for any of the following reasons:

. . . .

(11) Committing immoral or unprofessional conduct. Unprofessional conduct shall include any departure from, or failure to conform to, the standards of acceptable and prevailing psychological practice. Actual injury to a client need not be established.

the cause of action was based, failed to set forth with specificity the grounds on which it is alleged that Dr. Grossman violated the Act and Principle 3(e). The Pennsylvania Psychological Association (PPA) filed a brief for amicus curiae in support of Dr. Grossman's motion to dismiss. On July 25, 2000, the Board denied the motion to dismiss.

On October 6, 2000, the Commonwealth presented a motion in limine in the nature of a motion to limit expert testimony because Dr. Grossman indicated in his pre-hearing statement that he planned to call three expert witnesses: Alvin I. Gerstein, Ph.D. (Dr. Gerstein), Sam Knapp, Ed.D. (Dr. Knapp), and Barry Bricklin, Ph.D. (Dr. Bricklin) and that the experts were scheduled to testify with respect to the same issues. The Commonwealth requested that the Board prohibit Dr. Grossman from calling all three expert witnesses. On October 19, 2000, the Board granted the motion in part and excluded the testimony of Dr. Gerstein.

On October 23, 2000, the Board conducted a formal hearing. D.M. testified that he spoke to Dr. Grossman on July 12, 1996, after Dr. Grossman met with L.M. on July 9, 1996. D.M. testified that he read a letter to Dr. Grossman over the telephone that advised him not to see L.M. again. Notes of Testimony, October 23, 2000, (N.T. 10/23/00) at 28, 34–35; R.R. at 75a. D.M. further testified that he was never asked to participate in a custody evaluation of L.M. with Dr. Grossman. N.T. 10/23/00 at 36; R.R. at 76a.

The Commonwealth called Dr. Grossman as a witness. Dr. Grossman admitted that he never obtained the written or verbal consent of D.M. to become involved in the custody case. N.T. 10/23/00 at 116; R.R. at 79a. Dr. Grossman testified that he never accused D.M. of having a caffeine addiction but that Dr. Cook had an obli-

gation to investigate this issue because B.P. raised it and it was not included in Dr. Cook's report. N.T. 10/23/00 at 139; R.R. at 101a. Dr. Grossman explained that he did not perform a comprehensive custody evaluation of L.M. but instead performed a limited review of Dr. Cook's procedures. N.T. 10/23/00 at 147; R.R. at 109a. Dr. Grossman explained that he informed Attorney Shemtob "the only way I'll undertake this case is if you tell the other side what I'm doing and she agreed to do it. As it turns out from later correspondence, it turns out she didn't." N.T. 10/23/00 at 151; R.R. at 112a. On cross-examination, Dr. Grossman denied that D.M. read anything to him over the telephone or that he was told not to see L.M. N.T. 10/23/00 at 164; R.R. at 115a.

Kirk Heilbrun, Ph.D. (Dr. Heilbrun), a professor of psychology and chair of the Department of Clinical and Health Psychology at MCP Hahnemann University, testified as the Commonwealth's expert. Dr. Heilbrun reviewed the records and documents in the case. Dr. Heilbrun testified that Dr. Grossman played the role of evaluator in that he did more than just critique Dr. Cook's evaluations. Dr. Heilbrun reported:

When he moved to evaluating LM, meeting with LM herself, then he moved from evaluating existing data to creating his own data. And in my mind, that was what made the difference between his critiquing the evaluation of another mental health professional, and performing a version of his own evaluation.

N.T. 10/23/00 at 220; R.R. at 141a. Dr. Heilbrun determined that Dr. Grossman functioned as an evaluator because he saw L.M. twice and developed some of his own data and because he testified about custodial aspects of the father-child relationship. N.T. 10/23/00 at 231. Dr. Heilbrun testified that the standard of conduct in

July 1996 and January 1997 for a custody evaluator required the permission and consent of both parents. N.T. 10/23/00 at 238; R.R. at 148a. Dr. Heilbrun also testified that it is not appropriate for a psychologist to delegate the responsibility of obtaining consent to attorneys. N.T. 10/23/00 at 241.

After the Commonwealth rested, Dr. Grossman's attorney moved to dismiss as the Commonwealth admitted that the Board had no written policy regarding consent in a custody evaluation. The Board denied the motion. Dr. Bricklin, a clinical psychologist and a professor at the Institute for Graduate Clinical Psychology at Widener University and an expert in custody, testified that there is no standard with respect to obtaining consent from both parents where there is shared legal custody. N.T. 10/23/00 at 365; R.R. at 180a. Dr. Bricklin testified that there was nothing in the Guidelines for Child Custody Evaluations in Divorce Proceedings (Guidelines) that would prevent a psychologist from critiquing the assessment methodology of someone else or conducting a limited evaluation of a child alone. N.T. 10/23/00 at 374; R.R. at 189a.

Dr. Grossman explained his conduct with respect to L.M.:

And I thought, up until I got my Prosecution letter, that as a psychologist based on the guidelines and the APA ethical principles, I had discretion. The discretion I used in this case was I felt it was very important, given what I had read in Dr. Cooke's report, for the Court to be informed that this child either did or did not have the ability to contribute to her own evaluation and express her own needs. And because I felt that it was important, because I made that clinical decision, I went forward notifying the father in the way that I felt was the best and most efficient way.

Notes of Testimony, October 24, 2000, (N.T. 10/24/00) at 424; R.R. at 217a.

Dr. Knapp, deputy executive officer and director of professional affairs with the PPA, testified that in 1996, there was no requirement that Dr. Grossman obtain D.M.'s consent for the review of Dr. Cook's report and there was no requirement that he notify or obtain consent from D.M. prior to meeting with L.M. N.T. 10/24/00 at 537; R.R. at 246a.

On December 3, 2001, the Board determined that Dr. Grossman violated Principle 3(e) and Section 8(a)(9) of the Act and issued a reprimand. The Board also determined that Dr. Grossman violated Section 8(a)(11) of the Act and assessed a $1,000 civil penalty. The Board sustained both Count 1 and Count 2 in the Order to Show Cause. The Board made the following relevant findings of fact:

17. The father called Respondent [Dr. Grossman] in the afternoon of July 12, 1996, instructed him not to meet with his daughter again and informed him that he would be sending the Respondent a fax following the conversation.

18. Respondent [Dr. Grossman] learned for the first time that the father did not give his consent to Respondent's evaluation of L.M.

19. Respondent [Dr. Grossman] did not advise the father at any time during that conversation that he was scheduled to meet with L.M. again two days later.

20. During the conversation, Respondent [Dr. Grossman] did not attempt to obtain the father's consent to meet with L.M. on July 14, 1996.

21. The father followed up his telephone call by sending the Respondent a letter by fax and certified mail reiterating his prohibition against the Respondent seeing L.M. again.

22. Respondent did not receive the fax until July 15, 1996. (NT 165, 480)

23. As was previously arranged, Respondent met L.M. at a Chinese restaurant on July 14, 1996, to see if the mother's claim that L.M. returned from visits with her [sic] the father in a 'dirty and slovenly condition' were accurate.

. . . .

28. Respondent testified at the custody proceeding the father had a caffeine addiction and as an insurance salesman would be required to work at night, both of which would affect his ability to care for L.M.

. . . .

31. Respondent conducted a custody evaluation.

State Board of Psychology, Adjudication and Order, December 3, 2001, (Adjudication) Findings of Fact Nos. 17–23, 28, 31 at 6–8; R.R. at 346a–348a.

The Board concluded that Dr. Grossman conducted a psychological evaluation of, and met with, L.M. without the knowledge or consent of D.M., in violation of Sections 8(a)(9) of the Act and Principle 3(e) and raised questions about D.M.'s parenting ability without having talked to D.M. in violation of Section 8(a)(11) of the Act. The Board also determined that Dr. Grossman had sufficient notice that he was required to obtain consent because the Board amended its Code of Ethics on June 17, 1989. Included in the amendment was Principle 3(e) which required adherence to the standards and guidelines of the American Psychological Association [APA] related to practice. In July 1994, the APA published Guideline # 9 of the Guidelines which provided:

> The psychologist obtains informed consent from all adult participants and, as appropriate, informs child participants.

In undertaking child custody evaluations, the psychologist ensures that each adult participant is aware of (a) the purpose, nature, and method of the evaluation; (b) who has requested the psychologist's services; and (c) who will be paying the fees. The psychologist informs adult participants about the nature of the assessment instruments and techniques and informs those participants about the possible disposition of data collected. The psychologist provides this information, as appropriate to children, to the extent that they are able to understand.

Guidelines for Child Custody Evaluations in Divorce Proceedings, *American Psychologist*, July 1994, at 679; R.R. at 413a.

■ Dr. Grossman contends that the Board failed to give proper notice to him of its use, enforcement and interpretation of the Guidelines and its standards for notice and consent in child custody situations, that the Board committed errors of law, that the Board committed a gross abuse of discretion when it did not allow him to present a witness, and that the Board's finding that the Commonwealth had met its burden of proof was a gross abuse of discretion and against the weight of the evidence presented. Dr. Grossman also contends that he did not violate Section 8(a)(9) of the Act because the Commonwealth did not meet its burden of proof, or because Principle 3(e) is defective, and/or because the Board misapplied one of its own cases. Dr. Grossman also contends that Section 8(a)(11) of the Act is unconstitutionally vague and/or the application of the section constitutes a result so excessively punitive so as to constitute a gross abuse of discretion on the part of the Board.[5]

---

5. An adjudication made by the Board must be affirmed on appeal unless constitutional rights have been violated, an error of law has been made, rules of administrative procedure have been violated or a finding of fact necessary to support the adjudication is not sup-

Dr. Grossman asserts that he did not need to obtain D.M.'s consent before either of his meetings with L.M. He also asserts that even if the Board required him to obtain consent, the Board failed to provide him with adequate notice of the requirement. Dr. Grossman also argues that the Board failed to inform him in the Notice and Order to Show Cause that he could be cited for immoral and unprofessional conduct under Section 8(a)(11) of the Act for his testimony at the custody trial rather than for his evaluation of L.M. without D.M.'s consent. As a consequence, Dr. Grossman could not adequately prepare a defense because he did not know that his testimony at the custody trial was at issue.

## I. COUNT I.

### A. Notice.

Dr. Grossman contends that the Board failed to provide proper notice of its use, enforcement, and interpretation of the Guidelines and its standards for notice and consent in child custody situations. Dr. Grossman notes that he was found guilty of violating Principle 3(e) because he did not follow Guideline # 9 which was published in 1994.

First, Dr. Grossman asserts that Principle 3(e) fails to delineate what a "standard or guideline" is. However, Guideline # 9 is clearly identified as a "guideline" of the APA. On this basis, this Court does not believe that Dr. Grossman could not ascertain that Guideline # 9 was a "guideline".

 Second, Dr. Grossman asserts that Principle 3(e) did not provide any notice or clarification as to what would happen if an APA guideline or standard was updated, such that the Board did not inform Dr. Grossman or other psycholo-

gists between July 1994, when the APA published the Guidelines that they applied to Principle 3(e). This Court does not accept Dr. Grossman's argument. If the Board's principle states that it will adhere to the Standards and Guidelines of the APA and the APA issues a new set of guidelines, it stands to reason that the new guidelines apply to psychologists licensed in the Commonwealth of Pennsylvania. Although Dr. Grossman argues that Principle 3(e) is unconstitutionally vague and fails to contain reasonable standards to guide conduct to satisfy the requirements of due process, *See Watkins v. State Board of Dentistry*, 740 A.2d 760 (Pa.Cmwlth. 1999), this Court does not agree. Principle 3(e) requires adherence to the standards and guidelines of the APA. Guideline # 9 of the Guidelines is a guideline of the APA. The principle is clear.

Next, Dr. Grossman asserts that the Board improperly delegated its rulemaking authority to the APA. Section 3.2(2) of the Act, 63 P.S. § 1203.2(2), requires the Board to establish standards of practice and a code of ethics. The Board complied with the General Assembly's statutory directive.

Dr. Grossman also asserts that a reliance on APA standards and guidelines could result in some guidelines or standards that are in conflict with Pennsylvania law. However, he does not indicate that was the case here.

 Dr. Grossman next asserts that even if he concedes that the Board legally incorporated the Guidelines into Principle 3(e) that the Guidelines are inapplicable because they are merely aspirational. The introduction to the Guidelines provides:

ported by substantial evidence. *Batoff v. State Board of Psychology*, 561 Pa. 419, 750

A.2d 835 (2000).

These Guidelines build upon the American Psychological Association's Ethical Principles of Psychologists and Code of Conduct (APA, 1992) and are aspirational in intent. As guidelines, they are not intended to be either mandatory or exhaustive. The goal of the guidelines is to promote proficiency in using psychological expertise in conducting child custody evaluations.

Guidelines at 677; R.R. at 411a. Dr. Grossman argues that because the Guidelines are aspirational and not mandatory, they cannot be applied to regulate conduct of psychologists in Pennsylvania. While Dr. Grossman is correct that the APA describes the Guidelines as aspirational and not mandatory, the Board made the Guidelines mandatory when it required compliance with the standards and guidelines of the APA.

As part of this same argument, Dr. Grossman asserts that the Board applied an unconstitutionally vague term, "higher standard", in reaching its decision. The Board stated:

> Regardless of whether the APA intended their Guidelines to be aspirational for association members, the inclusion of APA standards and guidelines in Principle 3(e) of the Board's Code of Ethics, 49 Pa.Code § 41.61, Principle 3(e), established a mandatory requirement for licensees in this Commonwealth. As the Board explained in its Preamble to the amended regulations, '[t]he primary objective of this amendment is to hold licensed psychologists to a *higher standard of ethical practice* ... in their relationships with their clients, their colleagues, their research subjects and the general public.' 19 *Pa. B.* 2555 (Emphasis in original).

Adjudication at 15; R.R. at 355a.

Dr. Grossman asserts that the term "higher standard" is unconstitutionally vague because it is unclear as to what or whom the standard is higher. Dr. Grossman believes that it is unclear whether the standard is higher than that for licensed physicians, chiropractors, podiatrists, cosmetologists or whether the standard is higher than the APA's standard or the standard of psychology boards in other states. However, Dr. Grossman answered his own question in his brief when he acknowledged that the preamble to the proposed 1989 Ethical Code explained that the new Code had a higher standard than the previous Code.[6]

■ Dr. Grossman next argues that convicting him of "immoral and unprofessional" conduct was a gross abuse of discretion because Principle 3(e) must be strictly construed and any ambiguities resolved in his favor. *See Commonwealth v. Lassiter,* 554 Pa. 586, 722 A.2d 657 (1998). This argument, however, goes to the underlying merits of Dr. Grossman's case and not to the issue of whether he received notice. Arguments raised in the argument section of a brief but not in the Statement of Questions Involved are waived. *See Pa.R.A.P.* 2116(a).[7]

---

6. With respect to this same issue, Dr. Grossman argues that it was improper for the Board to cite him for "immoral and unprofessional" conduct because he was compelled to adhere to a higher standard, the aspirational APA Guideline. Dr. Grossman was cited for "immoral and unprofessional" conduct in Count II which will be discussed below.

7. Dr. Grossman further argues that a brief summary of one of the Board's decisions in the State Board of Psychology Spring 1993 Newsletter was insufficient to apprise him of the necessity to obtain the consent of both parents before a custody evaluation. The summary of *Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs v. Rosenblum,* Docket No. 436–MISC–91, File No. 86–63–01749, in the State Board of

## B. Errors of Law.

Dr. Grossman contends that the Board committed errors of law. First, Dr. Grossman contends that the Board erred when it referred to two cases, *In re: Wesley J.K.*, 299 Pa.Super. 504, 445 A.2d 1243 (1982)[8] and *Hill v. Hill*, 422 Pa.Super. 533, 619 A.2d 1086 (1993)[9]. The Board stated:

> Respondent's [Dr. Grossman] actions should also have been guided by the decisions of the Superior Court in Hill and Wesley involving shared or joint custody. 'Legal custody' is defined by statute as 'the legal right to make decisions affecting the best interest of a minor child, including, but not limited to, medical, religious and educational deci-

sions.' 23 Pa.C.S.A. § 5302. In the Board's opinion, decisions involving psychological evaluations are encompassed within this definition. . . . Unlike sole custody, in shared or joint custody, legal custody is shared while physical custody is alternated by the agreement of the parties. *Wesley*, 445 A.2d at 1247. 'The philosophic premise of shared custody is the awarding to both parents of *responsibility* for decisions and care of the child. . . . Shared custody allows both parents input into major decisions in the child's life.' *Hill*, 619 A.2d at 1088 (emphasis added [by the Board] and *Wesley*, 445 A.2d at 1247). Given that both parents' input is required, and in light of Guideline # 9, dual consent of both par-

Psychology Spring 1993 Newsletter stated: "The Board's action against Rosenblum was based upon his admission to having failed to value objectivity, engaged in a dual relationship, and committed unprofessional conduct in five child-custody cases." State Board of Psychology Newsletter, Spring 1993, at 8; R.R. at 580a.

The Board referred to *Rosenblum* in Footnote # 17 of the Adjudication at the conclusion of its discussion of *Hill* and *Wesley* and its determination that in light of Guideline # 9, dual consent of both parents must be provided:

> Applying these principles regarding dual consent, as early as 1991, the Board reprimanded and assessed a civil penalty against a psychologist for, amongst other violations, violating Principle 3 for failing to obtain the consent of both parents who had shared legal custody. Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs v. Rosenbloom [sic], Docket No. 436–MISC–91, File No. 86–63–01749, p. 6. Notice of the Rosenbloom [sic] Consent Agreement was published in the Board's Spring 1993 newsletter which was mailed to all licensees.

Adjudication, n. 17 at 16–17; R.R. at 357a–358a.

This Court agrees with Dr. Grossman that this squib in a newsletter did not constitute sufficient notice to Dr. Grossman. Further, neither the Board in its opinion nor the Commonwealth in its brief to this Court cites any

case law, rule, or regulation that a brief summary constitutes notice. Even though the Board's reliance on the mention of this case in the newsletter is misplaced, this Court agrees with the Board that Principle 3(e) and the Guidelines constituted sufficient notice.

**8.** In *Wesley*, our Pennsylvania Superior Court set forth the basis under which parents may be awarded shared custody of a child. The Superior Court referred to Section 3 of the Custody and Grandparents Visitation Act, Act of November 5, 1981, P.L. 115, 23 P.S. § 1003, which defined Legal Custody as the "legal right to make major decisions affecting the best interests of a minor child, including but not limited to, medical, religious and educational decisions." Under a shared custody arrangement, legal and/or physical custody of a child is shared.

**9.** In *Hill*, our Pennsylvania Superior Court reversed the order of the Court of Common Pleas of Philadelphia County that awarded parents shared legal custody but allowed the mother to make the decision if a conflict arose. The Superior Court determined that the trial court's order effectively granted the mother sole legal custody and reasoned, "[i]t is abundantly clear . . . that the concept of shared legal custody does not contain the principle of giving one parent final authority in the case of a dispute." *Hill*, 619 A.2d at 1089.

ents must be provided. (Footnote omitted).

Adjudication at 16; R.R. at 356a.

Dr. Grossman attacks the Board's reliance on *Hill* and *Wesley* from different angles. First, he asserts that the Board did not find his intervention or evaluation of L.M. to be a major decision [10] therefore dual consent was not required. Second, he asserts that because neither *Hill* nor *Wesley* mentions health professionals of any sort there is no affirmative duty for a psychologist to legally interpret a joint custody order and abide by the order by withholding professional service absent joint consent.

■ Although the Board did not explicitly make a finding that the decision to pursue a second evaluation of L.M. was "major", this Court infers that the Board in the promulgation of its regulations and Code of Ethics regarded a custody evaluation to be a major decision, and, second, while *Hill* and *Wesley* do not mention health care professionals or psychologists, that was not the thrust of the opinions. *Hill* and *Wesley* addressed the concept of shared legal custody in Pennsylvania. The result is that when both parents share legal custody of a child, then the consent of both parents is needed with respect to major decisions.

Dr. Grossman also alleges that he met with L.M. a second time to investigate B.P.'s allegation that D.M. did not properly care for L.M. because she returned to B.P. in a "slovenly and unkempt" condition. Dr. Grossman argues that he was investigating possible child abuse and, consequently, did not have to obtain the consent of D.M. before he met with L.M. on

July 14, 1996. The Board noted that where there is a "bona fide emergency" a psychologist need not obtain the consent of both parents in the performance of a custody evaluation. The Board cited allegations of sexual abuse or a child's threat of suicide as examples. Adjudication at 13, n. 11; R.R. at 353a. This Court agrees with the Board that Dr. Grossman was not excused from obtaining D.M.'s consent because L.M. was returned to B.P. not freshly bathed and coiffured.

### C. Refusal to Allow Dr. Gerstein to Testify.

■ Dr. Grossman next contends that the Board committed an abuse of discretion when it did not permit the testimony of Dr. Gerstein. Dr. Grossman asserts that Dr. Gerstein, a member of the Board from 1992–1997 when Dr. Grossman's alleged offenses occurred, would in his testimony address whether Dr. Grossman's conduct was in any way forbidden by a Board policy, rule, and/or adjudication. Prior to the commencement of the hearing, the Board granted the Commonwealth's motion in limine to exclude Dr. Gerstein's testimony. The Board determined that Dr. Gerstein was not permitted to testify because Dr. Grossman informed the Board that Dr. Gerstein would have testified that while he was a member of the Board Dr. Grossman's actions in conducting a custody evaluation would not have been a violation of the Act or the regulations. The Board determined that Dr. Gerstein's view of how the Board would have interpreted the Act or the regulations were not relevant or probative. Dr. Grossman argues that the Board committed an abuse of

10. Section 5302 of the Domestic Relations Code, 23 Pa.C.S. § 5302, gave legal custodians the legal right to make major decisions affecting the best interest of a minor child, including, but not limited to, medical, reli-

gious and educational decisions. This section was the same as the section cited in *Wesley*. Since *Wesley*, the domestic relations statutes have been consolidated.

discretion because Dr. Gerstein would not have testified with respect to his interpretation of the Guidelines but would have discussed whether the Guidelines served as rules for the Board in 1996.

In *Allegheny County Institution District v. Department of Public Welfare,* 668 A.2d 252 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 547 Pa. 757, 692 A.2d 567 (1997), this Court affirmed a decision of a hearing examiner of the Department of Public Welfare that refused permission to allow Allegheny County Institution District to introduce the testimony of Speaker of the Pennsylvania House of Representatives, K. Leroy Irvis, with respect to the General Assembly's intent when it passed a certain act. This Court stated that it "is not bound by the arguments of a single legislator made on the floor in debate of the issue, much less the post-Act expression of opinion by a single legislator made on the floor in debate of the issue, much less the post-Act expression of opinion by a single legislator." *Allegheny County Institution District,* 668 A.2d at 257 n. 13.

Similarly, the Board would not be bound by the opinion of a single Board member of the Board's intentions regarding the Board's rules and policies in 1996. The rules and policies speak for themselves and the underlying intent was subject to administrative review by the Board. This Court agrees with the Board that Dr. Gerstein's opinion as a former Board member was not relevant or probative, and the Board did not abuse its discretion when it chose not to permit the testimony of Dr. Gerstein.

### *D. Burden of Proof.*

■ Dr. Grossman next contends that the Board's finding that the Commonwealth met its burden of proof was a gross abuse of discretion and was against the weight of the evidence. Dr. Grossman asserts that he along with Dr. Knapp, Dr. Bricklin, and the PPA, believed that dual parental consent was unnecessary. Further, Dr. Grossman asserts that he did not perform a custody evaluation but that upon the request of B.P. he evaluated L.M. and critiqued the assumptions and methodology of Dr. Cooke's assessment.

With respect to this issue, the Board determined:

> Lastly, Respondent [Dr. Grossman] asserted that he was not required to obtain the father's consent because he did not perform a custody evaluation. Respondent [Dr. Grossman] maintained that he was simply providing a custody related evaluation, which does not require the consent of both parents.... He insists that within the gamut of this review he was permitted to review Dr. Cook's report and also conduct a brief assessment of the child.... Conversely, the Commonwealth insisted that Respondent served as a custody evaluator, thereby requiring dual consent.
>
> Drs. Bricklin, Knapp and Heilbrun all testified that a 'records review' is limited to a review of the documents of record including the custody report, raw testing data, and background information. It does not involve any personal contact with the parties.... Dr. Knapp further testified that *any* direct evaluation of the child or the parent may be construed as a custody evaluation.... Again, all three experts agreed that in this type of evaluation dual consent is required....
>
> Specifically, in this case, Dr. Heilbrun opined that the Respondent [Dr. Grossman] exceeded the scope of a records review and acted more like a custody evaluator because he met with L.M. on two occasions. The Board agrees. (Citations and footnote omitted).

Adjudication at 17–18; R.R. at 357a–358a. This Court finds that the Board had the authority to make such findings of fact and conclusions of law.

Dr. Grossman also asserts that he did not violate Guideline # 9 because he was not required to obtain consent from D.M. because D.M. was a litigant. Dr. Grossman argues that D.M. was not a participant because he was not going to be examined.

The Board disagreed with Dr. Grossman:

> Respondent [Dr. Grossman] argues that even if Guideline # 9 is mandatory it did not require him to obtain the father's consent because it uses the language 'adult participants' rather than 'litigants.'... In Respondent's [Dr. Grossman] opinion, the father was a 'litigant' and therefore, was not required to provide consent.... Reading the Guideline as a whole, the Board simply cannot interpret it as requiring anything less than the consent of both the mother and the father. The Guideline requires that 'each' participant understand who has requested the services and who is paying the fee. Given this specific language, it would be illogical to suggest that the adult participants are limited to the parties hiring the psychologist since they are well aware of the scope of the engagement and the fee. (Footnote and citations omitted).

Adjudication at 15–16; R.R. at 356a–357a. Again, this Court must conclude that the Board had the authority to make these findings and conclusions and committed no error.

■ Essentially, Dr. Grossman next asks this Court to reweigh the testimony of his witnesses, Dr. Bricklin and Dr. Knapp, that Dr. Grossman did not have a duty to obtain D.M.'s consent. Dr. Grossman also asserts that the Commonwealth's expert, Dr. Heilbrun, came to the same conclusion. A review of Dr. Heilbrun's testimony does not support Dr. Grossman's assertion. Dr. Heilbrun testified that, in his opinion, Dr. Grossman conducted a custody evaluation which required the consent of both parents. The Board accepted Dr. Heilbrun's testimony over the testimony of Dr. Knapp and Dr. Bricklin. It is not this Court's function to judge the weight and credibility of evidence before an administrative agency. *Makris v. State Bureau of Professional and Occupational Affairs, State Board of Psychology,* 143 Pa.Cmwlth. 456, 599 A.2d 279 (1991). Dr. Grossman's argument must fail.[11]

## II. COUNT II—SECTION 8(a)(11) OF THE ACT.

Finally, Dr. Grossman contends that Section 8(a)(11) of the Act is unconstitutionally vague and/or the application of this statute constituted a result so excessively punitive as to constitute a gross abuse of discretion by the Board. Dr. Grossman believes that the Order to Show Cause was

11. Dr. Grossman next contends that the Commonwealth did not meet its burden of proof and/or Principle 3(e) was defective and/or the Board misapplied *Rosenblum* and he was not in violation of Section 8(a)(9) of the Act. This Court has already determined that the Commonwealth met its burden of proof with respect to Principle 3(e) and that Principle 3(e) was not defective. With respect to *Rosenblum,* Dr. Grossman argues that he did not violate *Rosenblum.* Dr. Grossman mischarac-

terizes the Board's discussion. The Board did not refer to *Rosenblum* to indicate that it served as a basis upon which to cite Dr. Grossman. Rather, the Board cited its decision to show that it required dual parental consent in certain cases since 1991 well before the conduct at issue here. This Court reiterates that the Board did not err when it determined that Dr. Grossman violated Section 8(a)(9) of the Act.

so vague that he was prevented from ascertaining that he was accused of a violation of Section 1208(a)(11) based on his testimony in the child custody hearing.

With respect to a violation as a result of Dr. Grossman's testimony, the Order to Show Cause provided:

**COUNT TWO**

17. Paragraphs 1 through 15 are incorporated by reference.

18. Based upon the foregoing Factual Allegations, the Board is authorized to suspend or revoke, or otherwise restrict Respondent's [Dr. Grossman] license, or impose a civil penalty under 63 P.S. § 1208(a)(11) because Respondent's [Dr. Grossman] conduct of conducting a psychological evaluation and/or meeting with L.M. with respect to a custody proceeding without the knowledge or consent of her father, D.M., constituted unprofessional conduct in the practice of psychology.

Order to Show Cause, February 14, 2000, Paragraphs 17–18 at 3; R.R. at 4a.

In the "Violations and Sanctions" section of the Adjudication, the Board stated:

The Respondent [Dr. Grossman] also engaged in unprofessional or immoral conduct, under Section 8(a)(11) of the Act, 63 P.S. § 1208. Even though Respondent [Dr. Grossman] did not meet with the father, the Respondent [Dr. Grossman] cast aspersions about the father's ability to parent L.M. Specifically, Respondent [Dr. Grossman] suggested that the father may have a caffeine addiction. (NT 139–142, 144, 272) While Respondent [Dr. Grossman] suggested that the mother also drinks coffee, Respondent [Dr. Grossman] only offered specific calculations about the father's consumption. Respondent [Dr. Grossman] also raised the issue of whether the father was able to care for L.M. because insurance salesmen often have to work at night.

(N.T. 139–142, 144, 272) Both statements were specifically intended to call the father's fitness to parent into question. In that Respondent [Dr. Grossman] did not speak with the father about these issues, his speculation constitutes unprofessional conduct. The Board believes that a $1,000 civil penalty is appropriate for this violation.

Adjudication at 20; R.R. at 360a.

In an administrative proceeding, the essential elements of due process are notice and an opportunity to be heard. *Wills v. State Board of Vehicle Manufacturers, Dealers and Salespersons,* 138 Pa. Cmwlth. 50, 588 A.2d 572 (1991). "Notice, the most basic requirement of due process, must 'be reasonably calculated to inform interested parties of the pending action, and the information necessary to provide an opportunity to present objections....'" *Noetzel v. Glasgow, Inc.,* 338 Pa.Super. 458, 487 A.2d 1372, 1377 (1985) *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1517, 89 L.Ed.2d 915 (1986), quoting *Pennsylvania Coal Mining Association v. Insurance Department,* 471 Pa. 437, 452–453, 370 A.2d 685, 692–693 (1977).

Here, Count II of the Notice and Order to Show Cause incorporated all of the previous paragraphs. Count II stated that Dr. Grossman violated Section 8(a)(11) of the Act because he conducted a custody evaluation and/or met with L.M. without D.M.'s consent. The Notice and Order to Show Cause did not mention Dr. Grossman's testimony at the custody trial. This Court agrees with Dr. Grossman that the Notice and Order to Show Cause failed to afford Dr. Grossman adequate notice and the opportunity to sufficiently prepare a defense to the challenge to his testimony at the custody trial. Although the Board's conclusions of law referenced Dr. Grossman's failure to obtain consent from D.M.

before the custody evaluation with respect to Count II, it is apparent from the Violations and Sanctions section of the Adjudication that the Board found that Dr. Grossman *violated Count II as a result of his testimony at the custody trial, not just the custody evaluation itself.* This Court concludes Dr. Grossman did not receive adequate notice of this specific charge against him. As a result, this Court sustains Dr. Grossman's appeal as to Count II.

Accordingly, this Court affirms in part and reverses in part. This Court affirms the Board as to the reprimand for Count I. This Court reverses the Board as to the $1,000 fine for Count II.

## ORDER

AND NOW, this 2nd day of June, 2003, the order of the State Board of Psychology in the above-captioned matter is affirmed in part and reversed in part. This Court affirms the State Board of Psychology's reprimand for Count I. This Court reverses the State Board of Psychology as to the $1,000 fine for Count II.