IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Laurie S. Pittman, Ph.D., | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1007 C.D. 2018 |
| | : | Argued: March 12, 2019 |
| Bureau of Professional and | : | |
| Occupational Affairs, State | : | |
| Board of Psychology, | : | |
| | : | |
| Respondent | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                           FILED:  June 12, 2019

Laurie S. Pittman, Ph.D. (Petitioner) petitions for review of the June 25, 2018 order of the Bureau of Professional and Occupational Affairs (Bureau), State Board of Psychology (Board) suspending Petitioner's license to practice psychology with the suspension immediately stayed in favor of no less than three years of supervised probation. We affirm.

## I. Background

The underlying facts, as found by the Board, are as follows. Petitioner has worked as a licensed psychologist in the Commonwealth of Pennsylvania since 1997. She routinely performs custody evaluations and has conducted nearly 100 throughout her career.

In 2013, the married parents of three minor children (Mother and Father) were in the process of divorcing and shared joint legal custody of their children. Mother scheduled an appointment for a custody evaluation with Petitioner on November 22, 2013. During intake, Mother indicated that the custody evaluation was required in order for her children to attend court-ordered therapy.

Petitioner was aware that consent from both parents is required to perform a custody evaluation and knew that Mother and Father were involved in a contentious divorce. At the time of the scheduled appointment, Petitioner entered the lobby and found that only Mother and the children were present. Mother immediately handed Petitioner photographs showing injuries to one of the children's backs. After seeing these photos, Petitioner no longer intended to perform a custody evaluation, but instead determined that she was a mandated reporter of suspected child abuse.[1]

Petitioner then individually interviewed the three children and Mother, who each described similar instances of abuse by Father. Mother also expressed ongoing frustration about the divorce proceeding. The interviews lasted a total of six hours. Petitioner did not obtain Father's consent to evaluate the children or attempt to evaluate Father before, during, or after the interviews with Mother and the children.

Thereafter, Petitioner drafted a nearly 50-page report titled, "Custodial and Psychological Report of [Mother], [children]" (Custodial Report). In the

---

[1] *See* Section 6311(a) of the Child Protective Services Law (CPSL), 23 Pa. C.S. §6311(a), defining mandated reporters of suspected child abuse as including persons licensed to practice in any health-related field under the jurisdiction of the Department of State.

Custodial Report, Petitioner made the following recommendations: (1) all family members receive therapy in order to heal from the abuse and divorce; (2) an x-ray be taken of the youngest child's back; (3) Mother be awarded sole custody of the children; (4) Father be prohibited from spending time with the children until first receiving psychotherapy; and (5) if Father receives psychotherapy, his therapist should coordinate with the children's therapist to determine if and when Father is ready to make amends. Petitioner did not include a disclaimer in the Custodial Report limiting the extent of her findings and recommendations in lieu of obtaining Father's consent or evaluation. She did not attempt to contact Father before, during, or after writing the Custodial Report.

Petitioner filed a report of suspected child abuse to the Pennsylvania Department of Human Services, ChildLine and Abuse Registry (ChildLine). She did not provide ChildLine with a copy of the Custodial Report; however, she did give a copy of the Custodial Report to Mother. *See* Board 7/25/2018 Opinion at 14. Ultimately, ChildLine concluded that the report of suspected child abuse was unfounded. Mother was not awarded sole custody of the children per Petitioner's recommendation, and the shared custody agreement between Mother and Father remained in place. As of the date of the Board's hearing, there were no further allegations of abuse in the present matter.

Christopher A. Connolly, a Professional Conduct Investigator II for the Pennsylvania Department of State, Bureau of Enforcement and Investigation was assigned to investigate a complaint and determine whether Petitioner engaged in unprofessional conduct. He completed a final investigation report for this case. The Bureau of Enforcement and Investigation also requested that psychologist, David J. LaPorte, Ph.D, review the case. In 2016, Dr. LaPorte issued an expert

3

report detailing his review of the investigative findings, and other relevant documents. On April 12, 2017, amended on September 26, 2017, the Board issued a four-count order to show cause (OSC) against Petitioner alleging violations under the Professional Psychologists Practice Act (Act).[2] The alleged violations were based on Petitioner's issuance of an improper custody evaluation.

In Counts I, II, and III of the OSC, the Bureau alleged that Petitioner was subject to discipline under Section 8(a)(9) of the Act[3] for failing to comply with American Psychological Association (APA) standards in violation of Ethical Principle 3(e) of the Board's regulations, 49 Pa. Code §41.61.[4] Specifically, the Bureau alleged in Count I that Petitioner violated Section 9.01(b) of the APA Ethical Principles of Psychologists and Code of Conduct (APA Code) by providing a psychological opinion about Father without first evaluating him or making an

---

[2] Act of March 23, 1972, P.L. 136, No. 52, *as amended*, 63 P.S. §§1201-1218.

[3] Section 8(a)(9) permits the Board to revoke or suspend a license for "[v]iolating a lawful regulation promulgated by the board, including, but not limited to, ethical regulations, or violating a lawful order of the board previously entered in a disciplinary proceeding." 63 P.S. §1208(a)(9).

[4] Ethical Principle 3(e) of the Board's regulations provides:

> As practitioners and researchers, psychologists act in accord with American Psychological Association standards and guidelines related to practice and to the conduct of research with human beings and animals. In the ordinary course of events, psychologists adhere to relevant governmental laws and institutional regulations. Whenever the laws, regulations or standards are in conflict, psychologists make known their commitment to a resolution of the conflict. Both practitioners and researchers are concerned with the development of laws and regulations which best serve the public interest.

49 Pa. Code §41.61.

effort to evaluate him;[5] in Count II that Petitioner violated Section 903 of the APA Specialty Guidelines for Forensic Psychology (APA Guidelines) by failing to clarify the limitations of her opinions without Father's evaluation;[6] and in Count

---

[5] Section 9.01(b) of the APA Guidelines, concerning Bases for Assessments, provides:

> (b) Except as noted in 9.01(c), psychologists provide opinions of the psychological characteristics of individuals only after they have conducted an examination of the individuals adequate to support their statements or conclusions. When, despite reasonable efforts, such an examination is not practical, psychologists document the efforts they made and the result of those efforts, clarify the probable impact of their limited information on the reliability and validity of their opinions, and appropriately limit the nature and extent of their conclusions or recommendations. []

APA Code, Section 9.01(b), *see* 49 Pa. Code §41.61, Ethical Principle 3(e).

Additionally, Section 9.01(c) states:

> When psychologists conduct a record review or provide consultation or supervision and an individual examination is not warranted or necessary for the opinion, psychologists explain this and the sources of information on which they based their conclusions and recommendations.

APA Code, Section 9.10(c); s*ee* 49 Pa. Code §41.61, Ethical Principle 3(e).

[6] Section 9.03 of the APA Guidelines provides:

> Forensic practitioners recognize their obligations to only provide written or oral evidence about the psychological characteristics of particular individuals when they have sufficient information or data to form an adequate foundation for those opinions or to substantiate their findings (EPPCC Standard 9.01). Forensic practitioners seek to make reasonable efforts to obtain such information or data, and they document their efforts to obtain it. When it is not possible or feasible to examine individuals about whom they are offering an opinion, forensic practitioners strive to

**(Footnote continued on next page…)**

5

III, that Petitioner violated Section 3.10(b) of the APA Code by failing to obtain Father's consent before evaluating the children.[7] Additionally, in Count IV, the Bureau alleged that Petitioner violated Section 8(a)(11) of the Act[8] by failing to conform to the standards of acceptable and prevailing psychological practice.

---

**(continued…)**

> make clear the impact of such limitations on the reliability and validity of their professional products, opinions, or testimony.
>
> When conducting a record review or providing consultation or supervision that does not warrant an individual examination, forensic practitioners seek to identify the sources of information on which they are basing their opinions and recommendations, including any substantial limitations to their opinions and recommendations.

APA Guidelines, Section 9.03; *see* 49 Pa. Code §41.61, Ethical Principle 3(e).

[7] Section 3.10(b) of the APA Code states:

> (b) For persons who are legally incapable of giving informed consent, psychologists nevertheless (1) provide an appropriate explanation, (2) seek the individual's assent, (3) consider such persons' preferences and best interests, and (4) obtain appropriate permission from a legally authorized person, if such substitute consent is permitted or required by law. When consent by a legally authorized person is not permitted or required by law, psychologists take reasonable steps to protect the individual's rights and welfare.

APA Code, Section 3.10(b); *see* 49 Pa. Code §41.61, Ethical Principle 3(e).

[8] Section 8(a)(11) permits the Board to revoke or suspend a license for:

> Committing immoral or unprofessional conduct. Unprofessional conduct shall include any departure from, or failure to conform to, the standards of acceptable and prevailing psychological practice. Actual injury to a client need not be established.

**(Footnote continued on next page…)**

6

Petitioner filed a response to the OSC denying the Bureau's allegations. Petitioner asserted that each of the three children separately reported numerous instances where Father physically, psychologically, and emotionally abused them, Reproduced Record (R.R.) at 268,[9] and stated that she was provided with documentary evidence supporting these abuse allegations. Petitioner averred that once Mother handed her photos of suspected child abuse, she was no longer a neutral custody evaluator but an advocate for the children as a mandated reporter of suspected child abuse under Section 6311 of the CPSL, 23 Pa. C.S. §6311.[10]

A hearing was held before the Board. The Bureau's expert, Dr. LaPorte, testified that once Petitioner became a mandated reporter, she should have stopped the custody evaluation because she could no longer maintain neutrality and, by her own admission, had become an "advocate" for the children. Dr.

---

**(continued…)**

63 P.S. §1208(a)(11).

[9] *But see* R.R. at 414 (Petitioner's testimony that during her interviews of the three children, the daughter told Petitioner that unlike her brothers, she had not been abused).

[10] Petitioner also argued that the Superior Court has already recognized her status as a mandated reporter; as such, she was entitled to statutory immunity and did not violate the APA Code. In a separate and unrelated action, [*Father] v. Pittman*, 150 A.3d 58, 68 (Pa. Super. 2016), Father sued Petitioner for defamation and negligence for producing the recommendations and conclusions within her Custodial Report. Our Superior Court denied Father's request for Petitioner's records of interviews with Mother and the children, as both irrelevant and confidential under the CPSL, and thus, not discoverable. In its analysis of Father's defamation claim, the court stated that while Petitioner initially came into contact with Mother and the children as a neutral third-party custody evaluator, she became a mandated reporter of abuse when she obtained information of their alleged abuse. In this disciplinary proceeding, Petitioner asserted that the Board erred in failing to apply collateral estoppel to the Superior Court's finding that she acted as a mandated reporter. We note that Petitioner's status as a mandated reporter was not disputed in this matter.

7

LaPorte testified that psychologists are "not hired to be advocates," and there is no written requirement that psychologists become "advocates" for the children in making a mandated report of suspected child abuse. Dr. LaPorte explained that in contentious custody cases, it is very common for one parent to alienate children against the other. He continued that without evaluating both parents, Petitioner had an incomplete understanding of the case. He stressed that these were *allegations* of abuse and stated that these pictures of suspected abuse could have been photo-shopped. Citing the "*Grossman* ruling,"[11] Dr. LaPorte stated that because Father shared custody of the children, Petitioner needed Father's consent to conduct the custody evaluation. R.R. at 355-56, 360, 363, 373-75, 385, 394-96, 402.

Dr. LaPorte described the distinction between a mandated reporter gathering information to make a report of suspected child abuse and investigating as a "gray" area absent specific guidelines from the Board. Nevertheless, Dr. LaPorte testified that Petitioner's use of extensive testing and recommendations were unnecessary actions for a mandated reporter. He also acknowledged that he had not filed a report of suspected child abuse with ChildLine since it was established; however, he explained that such reports were previously made to a local agency and that the law has essentially remained the same. R.R. at 351, 376-77, 395, 397, 401.

In sum, Dr. LaPorte opined that Petitioner performed an improper custody evaluation in violation of APA standards because she did not: evaluate

---

[11] *See Grossman v. State Board of Psychology,* 825 A.2d 748, 759 (Pa. Cmwlth. 2003) (holding that when both parents share legal custody of a child, the consent of both parents is needed with respect to major decisions).

Father; gather information from a wide variety of sources as required for custody evaluations; perform the kind of evaluation necessary to make recommendations concerning custody or mental health treatment for Father; or qualify the limitations of her data without Father's evaluation. Dr. LaPorte also testified that while Petitioner could have recommended that the youngest child see a physician, she did not have the professional competence to recommend the performance of medical procedures, such as x-rays. R.R. at 357, 359, 361, 391-92, 401.

Petitioner testified that she initially intended to perform a custody evaluation during the scheduled appointment. She said she believed that Mother had contacted Father about the custody evaluation and that Father was expected to attend. She recognized that consent from both parents is necessary to perform a custody evaluation in matters of joint custody and admitted that she did not contact Father herself. Petitioner stated that when she entered her office lobby to meet the family on the date of their appointment, Mother "immediately presented pictures that showed injuries to a child's back," a timeline of allegations of abuse, police reports, and other documents. R.R. at 411-13, 427, 430-32, 439.

Petitioner said that after seeing the photos depicting suspected child abuse, she "switched gears;" she no longer intended to perform a custody evaluation as a neutral third party, but was now an advocate for the children conducting a mandated report of suspected child abuse. Petitioner said that she could not obtain Father's consent because he was the alleged perpetrator in her report of suspected child abuse and ChildLine reports are intended to be confidential. R.R. at 413-14, 416-17, 427-29, 440.

Petitioner testified that she interviewed Mother and the children to gain information necessary to make a report of suspected child abuse to

9

ChildLine.[12]  Petitioner stated that she asked the children a variety of questions, such as what they liked best about Mother and Father's respective houses, and she inquired further about their experiences of alleged abuse by Father.  Petitioner stated that she required this much information in order to call ChildLine because ChildLine "asks if you've done evaluations, assessments, [etc]."  R.R. at 417, 419, 424, 434.[13]

Throughout her testimony, Petitioner stressed that she drafted the Custodial Report to give to the referring therapist to obtain court-ordered therapy for the children.  She described a tension between her belief that the children truly needed therapy and the referring therapist's position that therapy could not be administered without a custody evaluation, stating that she "couldn't do the custody evaluation because it became about mandated reporting."  Petitioner maintained that she did not conduct a custody evaluation but instead made a report of suspected child abuse.  R.R. at 424, 428, 435, 443, 447.[14]

---

[12] Section 6313(b) of the CPSL, 23 Pa. C.S. §6313(b), sets forth the information to be provided in the ChildLine report.

[13] Petitioner stated that filing a report to ChildLine over the phone can take anywhere from 20 minutes to an hour and that her call to ChildLine concerning the present matter took approximately 20 minutes.  R.R. at 407.

[14] Several Board members questioned Petitioner about the distinction between a custody evaluation and a ChildLine report, and their exchange reads, in relevant part:

> DR. ERICKSON:  [] I saw within your [Custodial R]eport that there were a number of test results that you presented.  What relevance did that have if this test is – if this [Custodial R]eport was simply a mandated reporting report?

**(Footnote continued on next page…)**

10

**(continued…)**

[PETITIONER]: Because the Court-ordered therapist said she couldn't do therapy for the children until there was a custody evaluation. And the children needed therapy.

DR. ERICKSON: But this wasn't a custody evaluation. That's your contention.

[PETITIONER]: Correct. But it was for the court-ordered therapist, who said she couldn't do the therapy.

DR. ERICKSON: But I thought this was a mandated reporter report. Isn't that your position?

[PETITIONER]: Yes.

DR. ERICKSON: Okay. So I'm still not clear as to the relevance of the psychological test data being in the report.

[PETITIONER]: Because ChildLine often will ask, have you done assessments?

DR. ERICKSON: And in your experience, ChildLine is competent to interpret psychological tests such as these?

[PETITIONER]: Well, that's why I wrote what the numbers meant, what the tests – what the T-scores and the percentiles meant.

\* \* \*

DR. SPAYD: I think I'm actually just rephrasing Dr. Erickson's question, just to be clear. It's my understanding that you believe your [Custodial R]eport had two functions, both as a mandated reporter, and to the court-ordered therapist.

[PETITIONER]: Yes.

DR. SPAYD: This kind of hybrid – ?

**(Footnote continued on next page…)**

Petitioner testified that she made recommendations in the Custodial Report without interviewing or treating Father because all of the children described abuse by Father, the children did not want to stay in Father's household, and, if therapy was recommended for everyone but Father, Father would be further alienated from the family. Petitioner testified that after she filed the ChildLine report, she gave Mother a copy of the Custodial Report, explaining that she did so because Mother was representing herself in the divorce and custody proceedings. R.R. at 434, 444.

Mother also testified at the hearing and primarily spoke about Father's alleged abuse of the children. Mother stated that she notified Father about the custody evaluation, prior to the appointment with Petitioner, but Father did not respond. R.R. at 450-58, 470.

In its June 25, 2018 decision, the Board found that Petitioner evaluated the children and made custody and treatment recommendations based on allegations of abuse without obtaining Father's consent or allowing him to first

---

**(continued…)**

> [PETITIONER]: Yes.
>
> DR. BRADLEY: [] But you did not submit a copy of this [Custodial R]eport to ChildLine? Your report was only verbal at the time?
>
> [PETITIONER]: They didn't ask me for the [R]eport. I don't know why that was. I told them that I had it, but they didn't ask for the copy. Again, this was before 2015, when everything became streamlined. And you could go online and you could like type in all of the information. So you were up to the mercy of who you were talking to on ChildLine.

R.R. at 443-47.

respond and supply crucial information. The Board determined that Petitioner *did* perform a custody evaluation, not just a report to assist in the mandated reporting of suspected child abuse.

Based on those findings, the Board sustained all four counts against Petitioner and ordered that her license to practice psychology be indefinitely suspended, with the suspension indefinitely stayed pending no less than three years of probation under the condition that she have a Board-approved practice supervisor. The Board concluded that while there is no direct evidence that Petitioner is a danger to the public as a therapist, she is a danger to the public as a forensic therapist because her actions put a parent and potentially other parents in positions where they might lose custody of their children because of an improperly conducted custody evaluation. The Board ordered Petitioner to pay a civil penalty of $5,000 and successfully complete at least 30 hours of remedial education on the topic of forensic psychology prior to seeking reinstatement to unrestricted status of her license.

On November 15, 2018, Petitioner filed an emergency motion for stay with the Board, which the Board denied on December 6, 2018. The Board's order stated that it "shall be effective immediately," but notes that the probation, civil penalty, and continuing education shall commence on January 7, 2019.

On December 28, 2018, Petitioner filed an emergency application for stay or supersedeas, injunction pending review, peremptory mandamus, and other relief with this Court, claiming that the Board posted its June 25, 2018 order on a Commonwealth website and informed various insurers that she is on probation. She asserted that these actions caused her to lose patients and credentialing with insurers. Petitioner claimed that if the Board's order was not stayed, the

information remained on the website, and the letters to the insurers are not retracted, she would be unable to engage in her profession without the possibility of incurring further sanctions. Following argument, by order dated January 4, 2019, this Court granted her requested relief finding that she had met the standard enunciated in *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 467 A.2d 805 (Pa. 1983). As a result, all sanctions imposed by the Board's June 25, 2018 and December 6, 2018 orders were stayed.

## II. Discussion

As a "person licensed or certified to practice in any health-related field under the jurisdiction of the Department of State," Petitioner indisputably qualifies as a mandated reporter under Section 6311 of the CPSL. 23 Pa. C.S. §6311. Mandated reporters are obligated to notify ChildLine upon a suspicion of child abuse by filing a report. 23 Pa. C.S. §6313(a)(1)-(2). Section 6318 of the CPSL generally provides that a person who makes a report of suspected child abuse in good faith shall have immunity from civil and criminal liability.[15]

---

[15] Section 6318(a) of the CPSL states:

> **(a) General rule.--**A person, hospital, institution, school, facility, agency or agency employee acting in good faith shall have immunity from civil and criminal liability that might otherwise result from any of the following:
>
> (1) Making a report of suspected child abuse or making a referral for general protective services, regardless of whether the report is required to be made under this chapter.
>
> (2) Cooperating or consulting with an investigation under this chapter, including providing information to a child fatality or near-fatality review team.

**(Footnote continued on next page…)**

On appeal,[16] Petitioner argues that the Board erred by failing to afford her immunity in this proceeding under Section 6318(a) of the CPSL because her interviews with Mother and the children and the Custodial Report were necessary to fulfill her responsibility as a mandated reporter of child abuse. We disagree.

By its plain language, Section 6318(a) provides immunity from civil and criminal liability to persons who, acting in good faith, make a report of suspected child abuse. To be clear, the Board did not impose discipline based on Petitioner's filing a report of suspected abuse with ChildLine. Rather, the Board's order is based on Petitioner's conducting interviews and issuing a Custodial Report in a manner that violates the Act and the Board's regulations. Section 6318(a) of the CPSL does not authorize a licensed psychologist to disregard professional standards as required by the Act and the Board's regulations.

---

**(continued…)**

(3) Testifying in a proceeding arising out of an instance of suspected child abuse or general protective services.

(4) Engaging in any action authorized under section 6314 (relating to photographs, medical tests and X-rays of child subject to report), 6315 (relating to taking child into protective custody), 6316 (relating to admission to private and public hospitals) or 6317 (relating to mandated reporting and postmortem investigation of deaths).

23 Pa. C.S. §6318(a).

[16] Our scope of review is limited to a determination of whether there has been a violation of constitutional rights, whether errors of law were committed, or whether necessary findings of fact made by the Board are supported by substantial evidence. *Morris v. State Board of Psychology*, 697 A.2d 1034, 1035-36 (Pa. Cmwlth. 1997).

15

Moreover, while Petitioner testified that she gathered information from Mother and the children that was necessary to make a report to ChildLine, the information she collected far exceeded the information identified by Section 6313(b) of the CPSL, which states as follows:

**(b) Contents of report.--** A written report of suspected child abuse, which may be submitted electronically, shall include the following information, if known:

(1) The names and addresses of the child, the child's parents and any other person responsible for the child's welfare.

(2) Where the suspected abuse occurred.

(3) The age and sex of each subject of the report.

(4) The nature and extent of the suspected child abuse, including any evidence of prior abuse to the child or any sibling of the child.

(5) The name and relationship of each individual responsible for causing the suspected abuse and any evidence of prior abuse by each individual.

(6) Family composition.

(7) The source of the report.

(8) The name, telephone number and e-mail address of the person making the report.

(9) The actions taken by the person making the report, including those actions taken under section 6314 (relating to photographs, medical tests and X-rays of child subject to report), 6315 (relating to taking child into protective custody), 6316 (relating to admission to private and public hospitals) or 6317 (relating to mandated reporting and postmortem investigation of deaths).

16

(10) Any other information required by Federal law or regulation.[17]

(11) Any other information that the department requires by regulation.

23 Pa. C.S. §6313(b).

Further, although Petitioner avers that her actions were for the benefit of ChildLine, she testified that she did not provide a copy of the Custodial Report to ChildLine and that she gave Mother a copy in order for her to obtain court-ordered therapy for the children. Petitioner contends that she could not obtain Father's consent or evaluation because ChildLine reports are meant to be confidential. However, substantial evidence, including Petitioner's own testimony, supports the Board's findings that Petitioner actually performed a custody evaluation in order for the children to receive court-ordered therapy.

Petitioner alternatively argues that if this Court was to find that she did perform a custody evaluation, Father's consent was not required under the "bona fide emergency" exception recognized in *Grossman*. In *Grossman*, the mother's attorney hired a psychologist, Dr. Grossman, to review another psychologist's recommendation of joint custody. Dr. Grossman asked the mother's counsel to obtain the father's consent, but evaluated the child without first confirming that the father had consented.

Upon learning of Dr. Grossman's actions in interviewing the child, the father contacted Dr. Grossman and ordered him to stop seeing the child; however, Dr. Grossman again met with the child. Dr. Grossman did not produce a formal

---

[17] Subsection (10) of Section 6313(b) of the CPSL was added by the Act of April 15, 2014, P.L. 417, after Petitioner evaluated Mother and the children and issued the Custodial Report.

17

report of his findings, but he provided feedback about the meetings to the mother's attorney. After the Montgomery County Common Pleas Court became aware that Dr. Grossman had met with the child without first obtaining the father's consent, the court ordered that both parents be prohibited from having another professional evaluate the child without consent from the other parent. Dr. Grossman testified in the custody trial and the Board issued an OSC, which resulted in the suspension of Dr. Grossman's license.

> On appeal, we stated the following:

> Dr. Grossman argues that he was investigating possible child abuse, and consequently, did not have to obtain the consent of [the father] before he met with [the child] on July 14, 1996. The Board noted that where there is a "bona fide emergency" a psychologist need not obtain the consent of both parents in the performance of a custody evaluation. The Board cited allegations of sexual abuse or a child's threat of suicide as examples.

825 A.2d at 759. Like the Board, this Court recognized the existence of an emergency exception, and agreed that it did not apply to Dr. Grossman's actions. Instead, we held that in matters of shared custody, consent from both parents is required for major decisions before evaluating the child.

Throughout her brief, Petitioner asserts that she was faced with a "bona fide emergency" as contemplated in *Grossman*. However, she cites no evidence to support these assertions. Consequently, we reject her contention that the Board's decision is in conflict with our holding in *Grossman*.

## III. Conclusion

In joint custody matters, consent from both parents is required to perform a custody evaluation. *See Grossman*; *see also* APA Code, Section

18

3.10(b); 49 Pa. Code §41.61, Ethical Principle 3(e). The Board found that Petitioner performed a custody evaluation without first obtaining Father's consent. The Board also determined that Petitioner issued a nearly 50-page report, titled in part, "Custodial Report," in which she made psychological evaluations about the entire family and advocated that Mother be awarded sole custody and Father be denied access to the children until first undergoing psychotherapy. The Board noted that Petitioner admittedly made no efforts to evaluate or contact Father. The Board found that Petitioner failed to obtain information from both parties and did not have a complete picture when making the custody evaluation, which is particularly concerning in the context of a contentious custody proceeding. Similarly, the Board found that Petitioner failed to limit the nature of her findings within the Custodial Report.

The evidence of record supports the Board's findings that Petitioner's conduct in interviewing the children and making the Custodial Report violated various sections of the APA's Code and Guidelines in violation of Ethical Principle 3(e) of the Board's regulations and acted in an unprofessional way that departed from acceptable and prevailing standards of psychological practice. The depth and breadth of the interviews Petitioner conducted far exceeded that necessary to make a report of suspected abuse to ChildLine. The immunity from civil and criminal liability afforded under Section 6318 of the CPSL to persons making a good faith report of suspected child abuse is not relevant to the Board's authority to take disciplinary action based on findings of professional misconduct.

Accordingly, we affirm.

MICHAEL H. WOJCIK, Judge

19

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Laurie S. Pittman, Ph.D., | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1007 C.D. 2018 |
| | : | |
| Bureau of Professional and | : | |
| Occupational Affairs, State | : | |
| Board of Psychology, | : | |
| | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 12th day of June, 2019, the order of the Bureau of Professional and Occupational Affairs, State Board of Psychology, dated June 25, 2018, is AFFIRMED. The stay granted by this Court's January 4, 2019 order is LIFTED.

_____

MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laurie S. Pittman, Ph.D., : 
                Petitioner : 
                 : 
        v. : No. 1007 C.D. 2018
                 : Argued: March 12, 2019
Bureau of Professional and : 
Occupational Affairs, State Board : 
of Psychology, : 
                Respondent : 

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

**DISSENTING OPINION**
**BY JUDGE SIMPSON**          **FILED: June 12, 2019**

Because I believe the statutory grant of immunity in Section 6318 of the Child Protective Services Law (CPSL), 23 Pa. C.S. §6318, is broader than that applied by the Majority, I respectfully dissent. I would vacate the adjudication of the Bureau of Professional and Occupational Affairs, State Board of Psychology (Board), which imposed discipline and a "civil penalty" on Laurie S. Pittman, Ph.D. (Petitioner), and remand for an express determination on whether she acted in good faith.

Section 6318(a) of the CPSL provides that a person who makes a report of suspected child abuse in good faith shall have immunity from civil and criminal liability.[1] The Majority treats this broad grant of immunity as inapplicable to

---

[1] Section 6318(a) of the Child Protective Services Law states:

professional licensing matters. Majority Op. at 15. However, by its terms, the immunity provision applies to "civil and criminal liability." 23 Pa. C.S. §6318(a). This case was not a criminal proceeding; rather, it was a civil proceeding, with civil law burdens of proof, to which the immunity applies. Any doubt about this interpretation is dispelled by the Board's imposition of a "civil penalty" of $5,000 upon Petitioner in its order.

Moreover, the grant of immunity applies to making a report of suspected child abuse "regardless of whether the report is required to be made under this chapter." 23 Pa. C.S. §6318(a)(1). This statutory language broadens the

---

   **(a) General rule.--**A person, hospital, institution, school, facility, agency or agency employee acting in good faith shall have immunity from civil and criminal liability that might otherwise result from any of the following:

   (1)   Making a report of suspected child abuse or making a referral for general protective services, regardless of whether the report is required to be made under this chapter.

   (2)   Cooperating or consulting with an investigation under this chapter, including providing information to a child fatality or near-fatality review team.

   (3)   Testifying in a proceeding arising out of an instance of suspected child abuse or general protective services.

   (4)   Engaging in any action authorized under section 6314 (relating to photographs, medical tests and X-rays of child subject to report), 6315 (relating to taking child into protective custody), 6316 (relating to admission to private and public hospitals) or 6317 (relating to mandated reporting and postmortem investigation of deaths).

23 Pa. C.S. §6318(a) (emphasis added).

immunity grant *beyond* the information to be included in a formal report under Section 6313 of the CPSL, 23 Pa. C.S. §6313, and beyond the immediate circumstances of the reporting. The Majority's conclusion to the contrary is reached without discussion of the broadening language referenced above. See Majority Op. at 16-17.

In my view, this is exactly the type of situation to which the broad grant of immunity applies. Because the General Assembly desired more reporting of suspected child abuse under the CPSL, it granted immunity to good faith reporters to protect against second-guessing years later by persons removed from the exigencies of the moment. The broad grant of immunity also protects good faith reporters from strategic retaliatory lawsuits and other attempts to intimidate them– efforts which can occur in civil litigation like the instant child custody case. The after-the-fact professional analysis here only serves to chill the duty of good faith reporting.

No one argues that Petitioner acted with any improper motive here, but the Board made no finding as to Petitioner's state of mind. The Board acted as though the statutory immunity provision was mere surplusage. I respectfully disagree with that approach, and I would remand for the Board to consider the "general rule" statutory immunity and to determine whether Petitioner acted in good faith.

_____
ROBERT SIMPSON, Judge