Jeff Fremont, Ph.D.,
                   Petitioner            :
                                          :
          v.                         :
                                          :
Bureau of Professional and       :
Occupational Affairs, State        :
Board of Psychology,            :   No. 678 C.D. 2020
                   Respondent      :   Argued:  May 10, 2021

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED:  June 17, 2021

        Jeff Fremont, Ph.D. (Dr. Fremont) petitions for review of the June 24, 2020 order of the State Board of Psychology (Board) that reprimanded Dr. Fremont and imposed 15 hours of approved continuing education that addresses the standards of acceptable and prevailing psychological practice in performing evaluations and making recommendations as to custody and/or visitation in child custody proceedings.  Upon review, we affirm.

## I. Background and Procedural Posture

        Dr. Fremont has been a licensed psychologist in the Commonwealth of Pennsylvania since 1983.  *See* Board's Final Adjudication and Order dated June 24,

2020 (Final Adjudication) at 3, Findings of Fact (F.F.) 1-3; Supplemental Reproduced Record (S.R.R.) at 140b. A solo practitioner who has been in private practice in Luzerne County for decades, Dr. Fremont's practice includes treating adults, children, and adolescents. *See* Final Adjudication at 4, F.F. 6-7; S.R.R. at 141b. Previously in his career, Dr. Fremont was retained by the Court of Common Pleas of Luzerne County (Luzerne CCP) to conduct court-appointed evaluations in custody-related matters, which evaluations he continues to perform, when appointed. *See* Final Adjudication at 4, F.F. 7; S.R.R. at 141b.

In 2013, the Honorable Richard M. Hughes, III (Judge Hughes) of the Luzerne CCP telephoned Dr. Fremont with a request that Dr. Fremont provide guidance in the determination of an ongoing custody matter (Child Custody Case).[1] *See* Final Adjudication at 4, F.F. 8; S.R.R. at 141b. Specifically, Judge Hughes requested that Dr. Fremont perform an expedited evaluation of members of the "E" family (Family), which included a mother, K.E. (Mother), a father, S.E. (Father), and two minor children (collectively, Children[2]) over whom Father had primary physical custody and Mother had supervised visitation rights. *See id.* Following their discussions, Judge Hughes issued an order dated June 3, 2013 (June 2013 Order), that, while not strictly comporting with Pennsylvania Rules of Civil Procedure 1915.8 and 1915.18,[3] directed Dr. Fremont to conduct a "full evaluation"

---

[1] *S.E. v. K.E.*, Luzerne CCP Docket No. 13005 of 2006. *See* Final Adjudication at 4, F.F. 8; Supplemental Reproduced Record (S.R.R.) at 141b.

[2] The Court will refer to the Children individually, when necessary, as M and J.

[3] Pennsylvania Rules of Civil Procedure 1915.8 and 1915.18 relate to court-directed physical and mental examinations of individuals and the form in which trial courts are to direct such examinations and reports, respectively. *See* Pa.R.C.P. Nos. 1915.8 & 1915.18; *see also* Final Adjudication at 5, F.F. 18; S.R.R. at 142b.

2

of the Family members and to provide Judge Hughes with "suggestions as to the partial custody periods currently provided for [Mother] and recommendations as to whether or not continued counseling for any or all of the parties listed above would be in the best interests of the [C]hildren." *See* Final Adjudication at 4-5, F.F. 9 & 16; S.R.R. at 141b-42b; *see also* June 2013 Order, Reproduced Record (R.R.) at 205.[4]

Based on his conversation with Judge Hughes and a review of a previous evaluation of Mother that Dr. Fremont completed for Luzerne CCP in October of 2011 (2011 Fremont Report),[5] Dr. Fremont understood that the June 2013 Order was a directive from Judge Hughes to reevaluate Mother and talk to Father and the Children and report to the Luzerne CCP regarding the current state of the Family and what arrangements would be in the best interests of the Children moving forward in the Child Custody Case. *See* Final Adjudication at 5, F.F. 17; S.R.R. at 142b. Accordingly, Dr. Fremont reviewed the 2011 Fremont Report, met with Father, met with Mother twice, met with the Children each individually, and spoke to Mother's family physician before issuing a written evaluation to Judge Hughes

---

[4] We note that the filed reproduced record does not comply with Pennsylvania Rule of Appellate Procedure 2173, which requires pages be separately numbered with Arabic figures followed by a small "a." *See* Pa.R.A.P. 2173.

[5] Dr. Fremont had previously performed a psychological evaluation of Mother and issued a report in October of 2011 (2011 Fremont Report) pursuant to an order of a different Luzerne CCP judge. *See* Final Adjudication at 4, F.F. 10; S.R.R. at 141b. In preparing the 2011 Fremont Report, Dr. Fremont had consulted with the Children's guardian *ad litem* and discussed Mother's claimed seizure disorder and the fact that the guardian *ad litem* had discovered Xanax at Mother's home during a visit. *See id.* at 4-5, F.F. 11-12; S.R.R. at 141b-42b. Dr. Fremont also contacted Mother's drug and alcohol counselor in preparing the 2011 Fremont Report, who informed Dr. Fremont that Mother was a drug abuser and a "pathological liar," observations which Dr. Fremont incorporated into the 2011 Fremont Report for Luzerne CCP. *See id.* at 5, F.F. 13-15; S.R.R. at 142b.

on August 1, 2013 (2013 Fremont Report). *See* Final Adjudication at 6, F.F. 19-25; S.R.R. at 143b.

Dr. Fremont stated his impressions of the Family for Judge Hughes in the 2013 Fremont Report as follows:

> SUMMARY AND IMPRESSION: This examiner has had an opportunity to interview all the members of the [F]amily. As noted above, time was of the essence in creating this report therefore; [sic] it was not possible to review past mental health records. However, I have been informed by the [F]ather that these records have been forwarded to the court previously.
>
> [Father] presents as a very genuine, forthright individual. There is no indication of any mental health problems as a result of this interview. He appears to have a good relationship with his two children. Further, both of the [C]hildren were quite forthright and should be given credit for being interviewed again. It was obvious that they were somewhat frustrated by this on-going process. These are two nice young children who are doing well in school and enjoy athletics. They seem to be well-adjusted and are very happy in their current environment. Unfortunately, they are extremely hesitant about expanding visitation with their mother. As noted above, [M] suggested that he would like to visit with her only once a year. Neither child is willing to visit in an unsupervised setting.
>
> [Mother] presents as a concerned parent who loves her children to the best of her ability. It is noted that, during the interview process, her cognitions were tangential and often off-topic. At times, her speech was quite fast but not particularly pressured. At one point in her last interview, she stated that she did not need legal representation because she studied the law and is more knowledgeable than the attorneys. This grandiose thinking is to be considered part of her presenting difficulty. Furthermore, this examiner remains unclear regarding her medical

4

status.  Apparently she does have migraine headaches.  In addition, as was obvious in the text above, [Mother] did have some difficulty focusing on the discussion.

Based on the interviews noted above and within a reasonable degree of psychological certainty, the recommendation at this time is for [Mother] to seek professional psychotherapy to diagnose and treat any possible mental health issue that may have developed. Further, all visitation for the present time and foreseeable future[] should be supervised by an experienced professional in the mental health area.  When the treating doctor and supervising professional inform the court that [Mother] is capable of visiting with her children in an unsupervised setting, it is suggested that the current situation be reevaluated.  [Father] should maintain his current custody status.

2013 Fremont Report at 4-5; S.R.R. at 37b-38b; *see also* Final Adjudication at 6-7, F.F. 26; S.R.R. at 143b-44b.

On July 26, 2016, the Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs (Bureau), filed a three-count Notice and Order to Show Cause (OTSC) against Dr. Fremont.  *See generally* OTSC, R.R. at 158-68; *see also* Final Adjudication at 1; S.R.R. at 137b.  The OTSC alleged that Dr. Fremont is subject to disciplinary action and the imposition of corresponding civil penalties and costs of investigation pursuant to the Professional Psychologists Practice Act (Act)[6] regarding the 2013 Fremont Report.  *See generally* OTSC; R.R. at 158-68; *see also* Final Adjudication at 1; S.R.R. at 138b.

Count One of the OTSC alleged that Judge Hughes ordered Dr. Fremont to conduct a comprehensive psychological custodial evaluation of the

---

[6] Act of March 23, 1972, P.L. 136, *as amended*, 63 P.S. §§ 1201-1218.

parties involved in the Child Custody Case, and that Dr. Fremont, accordingly, met with Mother multiple times and authored a report – the 2013 Fremont Report – that made child custody and visitation recommendations to Luzerne CCP. *See* OTSC at 3-4, ¶¶ 9-19; R.R. at 161-62. Count One alleged that Dr. Fremont violated Ethical Principle 3(e) of the Board's Code of Ethics (Principle 3(e))[7] by deviating from the American Psychological Association's (APA) Ethical Principles of Psychologists and Code of Conduct Ethical Standard 9.01 (Bases for Assessments)[8] in that, with

---

[7] Principle 3(e) provides:

> As practitioners and researchers, psychologists act in accord with American Psychological Association standards and guidelines related to practice and to the conduct of research with human beings and animals. In the ordinary course of events, psychologists adhere to relevant governmental laws and institutional regulations. Whenever the laws, regulations or standards are in conflict, psychologists make known their commitment to a resolution of the conflict. Both practitioners and researchers are concerned with the development of laws and regulations which best serve the public interest.

49 Pa. Code § 41.61(3)(e).

[8] Section 9.01 of the APA Ethics Code requires:

> (a) Psychologists base the opinions contained in their recommendations, reports, and diagnostic or evaluative statements, including forensic testimony, on information and techniques sufficient to substantiate their findings.

> (b) Except as noted in 9.01c, psychologists provide opinions of the psychological characteristics of individuals only after they have conducted an examination of the individuals adequate to support their statements or conclusions. When, despite reasonable efforts, such an examination is not practical, psychologists document the efforts they made and the results of those efforts, clarify the probable impact of their limited information on the reliability and validity of their opinions, and appropriately limit the nature and extent of their conclusions or recommendations.

regard to the custodial recommendations contained in the 2013 Fremont Report, Dr. Fremont: (1) failed to utilize multiple methods of assessment with regard to Mother; (2) failed to articulate any additional sources of information, such as previous evaluations of Mother; (3) failed to note limitations in the data collected with regard to Mother or in his conclusions/recommendations; (4) failed to note scientific evidence that provides any basis for the recommendations; (5) failed to address necessary issues such as parenting skills or the needs of the Children, such as problems with anxiety; and (6) failed to address the match between parenting skills and the needs of the Children. *See* OTSC at 4-5, ¶¶ 21-26; R.R. at 162-63. Regarding these allegations, Count One of the OTSC argued:

> Based upon the foregoing [f]actual [a]llegations, the Board is authorized to suspend or revoke or otherwise restrict [Dr. Fremont's] license under Section 8(a)(9) of the Act, 63 P.S. § 1208(a)(9),[9] or impose a civil penalty under Section 11(b) of the Act, 63 P.S. § 1211(b)[10] . . . in

---

OTSC at 4, ¶ 20; R.R. at 162.

[9] Section 8(a)(9) of the Professional Psychologists Practice Act (Act) provides:

> (a) The board may refuse to issue a license or may suspend, revoke, limit or restrict a license or reprimand a licensee for any of the following reasons:
>
> . . . .
>
> (9) Violating a lawful regulation promulgated by the board, including, but not limited to, ethical regulations, or violating a lawful order of the board previously entered in a disciplinary proceeding.

63 P.S. § 1208(a)(9).

[10] Section 11(b) of the Act provides:

> that [Dr. Fremont] violated Board regulations at 49 Pa. Code § 41.61, Ethical Principle 3(e) by deviating from the APA Ethical Principles of Psychologists and Code of Conduct of Ethical Standard 9.01 (Bases for Assessments).

OTSC at 5, ¶ 27; R.R. at 163. Based on the same factual allegations as Count One, Count Two of the OTSC alleged that Dr. Fremont was subject to the same penalties for deviations from Sections 3, 10 & 13 of the APA's Guidelines for Child Custody Evaluations in Family Law Proceedings (APA Guidelines).[11] *See* OTSC at 5-6, ¶¶ 28-32; R.R. at 163-64. Finally, OTSC Count Three alleged, again based on the same factual allegations, that Dr. Fremont violated Section 8(a)(11) of the Act, 63 P.S. § 1208(a)(11),[12] and was thus subject to licensing penalties and civil fines by failing

---

> In addition to any other civil remedy or criminal penalty provided for in this act, the board, by a vote of the majority of the maximum number of the authorized membership of the board as provided by law, or by a vote of the majority of the duly qualified and confirmed membership or a minimum of four members, whichever is greater, may levy a civil penalty of up to one thousand dollars ($1,000) on any current licensee who violates any provision of this act or on any person who practices psychology, as defined in this act, without being properly licensed to do so under this act. The board shall levy this penalty only after affording the accused party the opportunity for a hearing, as provided by Title 2 of the Pennsylvania Consolidated Statutes (relating to administrative law and procedure). All fines and civil penalties imposed in accordance with this act shall be paid into the Professional Augmentation Account.

63 P.S. § 1211(b).

[11] Section 3 of the APA Guidelines states: "The evaluation focuses upon parenting attributes, the child's psychological needs, and the resulting fit." OTSC at 5; R.R. at 163. Section 10 of the APA Guidelines provides: "Psychologists strive to employ multiple methods of data gathering." OTSC at 6; R.R. at 164. Section 13 of the APA Guidelines in turn specifies: "Psychologists strive to base their recommendations, if any, upon the psychological best interests of the child." *Id.*

[12] Section 8(a)(11) of the Act provides:

8

to conform to the standards of acceptable and prevailing psychological practice. *See* OTSC at 6, ¶¶ 33-34; R.R. at 164. Dr. Fremont filed an answer to the OTSC on August 23, 2016. *See* S.R.R. at 1b-10b.

The Board conducted a hearing through a hearing examiner on September 5, 2018, and June 21, 2019. *See generally* September 5, 2018 and June 21, 2019 Notes of Testimony (N.T.).[13] At the hearing, the Bureau presented the testimony of Thomas Olek (Investigator Olek), a professional conduct investigator with over 20 years of experience with the Pennsylvania Department of State, Bureau of Enforcement and Investigation (BEI). *See* Final Adjudication at 7; F.F. 27; *see also* N.T. at 11-52. Investigator Olek testified that the Fremont file was assigned to him in September 2013 following a complaint filed by Mother on September 14, 2013 (Complaint). *See* Final Adjudication at 8, F.F. 28; N.T. at 13 & 18-19. Investigator Olek explained that he used the allegations of the Complaint merely as

---

> (a) The board may refuse to issue a license or may suspend, revoke, limit or restrict a license or reprimand a licensee for any of the following reasons:
>
> . . . .
>
> (11) Committing immoral or unprofessional conduct. Unprofessional conduct shall include any departure from, or failure to conform to, the standards of acceptable and prevailing psychological practice. Actual injury to a client need not be established.

63 P.S. § 1208(a)(11).

[13] The transcript pages of the September 5, 2018 portion of the hearing are numbered 1 through 157. *See* September 5, 2018 hearing transcript, R.R. at 1-157. The transcript of the second half of the hearing conducted on June 21, 2019, begins on page 158 and continues through page 228. *See* June 21, 2019 hearing transcript, R.R. at 262-332. As such, citations to the hearing transcript herein will be noted simply as "N.T.," without reference to the specific date of testimony.

9

a starting point for the investigation. *See* N.T. at 18-19. As part of his investigation, Investigator Olek met and spoke with both Mother and Dr. Fremont[14] and reviewed various documents provided by each. *See* Final Adjudication at 8, F.F. 29-30; N.T. at 19-21, 24-25 & 37. He also met with both of the Children and investigated Mother's accusation that Father had claimed she had a seizure disorder. *See* N.T. at 22 & 34. Based on the information he compiled, Investigator Olek filed his final report with the BEI on July 14, 2014. *See* N.T. at 14. Ultimately, Investigator Olek's final report expressed no conclusions regarding the credibility of Mother's allegations.[15] *See* Final Adjudication at 8, F.F. 31; N.T. at 20-22.

The Bureau also presented the expert testimony of psychologist David LaPorte, Ph.D., at the hearing.[16] *See* Final Adjudication at 8-10, F.F. 32-41; *see also*

---

[14] Counsel was present with Dr. Fremont during the interview with Investigator Olek, but no limitations were placed on the duration of the interview or the questions or documents discussed. *See* N.T. at 24-25.

[15] Investigator Olek explained that he did not investigate some of Mother's claims, including allegations that she had assisted in having Attorney John Bellino removed from the Luzerne CCP system and that Dr. Fremont was a close friend of Attorney Bellino and was getting back at her on Attorney Bellino's behalf, which claims Investigator Olek described as "irrelevant" to the task of investigating the facts pertinent to the Complaint. *See* N.T. at 20; *see also* N.T. at 42-44.

[16] Dr. LaPorte is a licensed psychologist who received his Bachelor of Science from the University of Scranton in 1976 and his Doctorate in Clinical Psychology from Temple University in 1988. *See* Final Adjudication at 8, F.F. 32; *see also* N.T. at 55. He currently serves as Director of the Doctoral Program in clinical psychology at Indiana University of Pennsylvania, where he has been a Professor of Psychology for 22 years. *See* Final Adjudication at 8, F.F. 33; *see also* N.T. at 55-56 & 61. Dr. LaPorte is a medical staff member and has privileges at the Indiana Regional Medical Center in Indiana, Pennsylvania. *See* Final Adjudication at 8, F.F. 34; *see also* N.T. at 56. Dr. LaPorte has conducted child custody evaluations in his clinic for 22 years and has taught doctoral seminars on proper conduct of child custody evaluations. *See* Final Adjudication at 8, F.F. 35; *see also* N.T. at 56 & 59. He is a member of the American Psychological Association, the Association of Family and Conciliation Courts, the American Association of Psychological Science, the International Neuropsychological Society, and the Pennsylvania Psychological Society. *See* Final Adjudication at 8-9, *see also* F.F. 36; N.T. at 57. Additionally, Dr. LaPorte is

10

N.T. at 55-148. Dr. LaPorte reviewed the available documents in this matter[17] and authored two expert reports dated March 29, 2016, and September 7, 2016. *See* Final Adjudication at 9-10, F.F. 39; *see also* N.T. at 71-72. Dr. LaPorte testified that Dr.

a psychological consultant for the Pennsylvania Department of State, a position in which he has served for the past six years. *See* Final Adjudication at 9, F.F. 37; *see also* N.T. at 57-58. Dr. LaPorte was offered and accepted without objection to testify in this matter as an expert in the field of psychology, both general and forensic. *See* Final Adjudication at 10, F.F. 40; *see also* N.T. at 57 & 69-71. All opinions set forth in Dr. LaPorte's testimony were expressed to a reasonable degree of certainty in the field of psychology. *See* Final Adjudication at 10, F.F. 41; *see also* N.T. at 71.

[17] In his testimony and letter report of March 29, 2016 (First LaPorte Report), Dr. LaPorte indicated that he reviewed the following materials in reviewing this matter:

- Investigation report filed by [Investigator] Olek (7/14/14)
- Complaint file[d] by [Mother] (9/14/13)
- Court order from [Luzerne CCP] (8/7/13)
- Report filed to [Judge Hughes] by Ned Delaney (10/31/13)
- Letter from Judge Hughes to [Mother] and [Father] (6/12/13)
- Reports filed to [Judge Hughes] by Dr. Fremont (10/13/11; 8/1/13)
- Medical records on [Mother] from:
  - Intermountain Medical Group
  - Dallas Family Practice, LLC
  - Wyoming Valley Health Care System
- Email letter from [Mother] to [Investigator] Olek (1/16/14)
- Letter from Patrick Kerrigan, D.O. (1/2/11)
- Criminal records of [Father]
- Untitled document by [Mother] (undated)
- Email from [Mother] to jconser@conserlaw.com (1/10/13)
- Letter to [Investigator] Olek from [Dr.] Fremont (3/19/14)
- Dr. Freemont's interview notes from sessions with [Mother] (6/6/11, 6/10/11, 9/19/11, 6/12/13, & 7/16/13)
- Consent Agreement and Order (8/7/13)
- Letter from Bridget K. Guilfoyle, Esq. to Dr. Fremont (7/30/14)

First LaPorte Report at 1; R.R. at 194; *see also* Final Adjudication at 9, F.F. 38; N.T. at 72-74. Additionally, Dr. LaPorte reviewed correspondence from Judge Hughes' chambers wherein the Judge's clerk reminded all parties of the June 2013 Order's requirement that the Family all submit to evaluation by Dr. Fremont so that Dr. Fremont might evaluate all four Family members and generate a report and recommendations as to the Family's custodial relationship and schedule. *See* N.T. at 75.

11

Fremont's recommendation to Luzerne CCP regarding Mother seeking professional psychotherapy and recommendations regarding custody and Mother's visitation rights represented an ethical violation by deviating from the standards of acceptable psychological practice. *See* N.T. at 80-84. In Dr. LaPorte's expert opinion, Dr. Fremont did not comply with the minimum standards of psychological practice in drafting the 2013 Fremont Report in that he failed to employ multiple methods to arrive at the conclusions contained in his report, failed to base the 2013 Fremont Report on sound psychological data, failed to note the needs of the Children and the parenting capacity of Mother and Father to meet those needs, and failed to substantiate the findings of the 2013 Fremont Report by stating the bases of the findings therein. *See* N.T. at 80-82. Dr. LaPorte also testified that the 2013 Fremont Report failed to connect the recommendations to underlying assumptions and gathered information, which is required in child custody reports. *See* N.T. at 82-83. Additionally, Dr. LaPorte explained that the 2013 Fremont Report included only very minimal evaluation and did not note the limitations of the information gathered for his recommendations. *See* N.T. at 83-84. Dr. LaPorte also testified that the 2013 Fremont Report was further deficient in that Dr. Fremont did not interview other parties beyond the Family, did not observe the parents with the Children, did not contact collateral sources, and did not perform psychological testing of any kind. *See* N.T. at 84-85. Ultimately, Dr. LaPorte concluded Dr. Fremont had not performed the requested evaluation within the acceptable prevailing standards of psychological practice. *See* N.T. at 87 & 91.

On cross-examination, Dr. LaPorte explained that, when the Luzerne CCP asked Dr. Fremont to comment on the continuation of Mother's supervised visits, the court charged Dr. Fremont with providing a custodial recommendation,

12

which required a proper evaluation. *See* N.T. at 98-103. Regarding Luzerne CCP's compliance with the Pennsylvania Rules of Civil Procedure, Dr. LaPorte testified that the actual form of the court's order for this evaluation was irrelevant to Dr. Fremont's obligations as a psychologist. *See* N.T. at 124. Dr. LaPorte further explained that, because the 2013 Fremont Report filed by Dr. Fremont included recommendations concerning Mother's continued supervised visitation and which parent should have primary physical custody, Dr. Fremont made child custody recommendations, despite the fact that the existing custodial arrangement was not altered by the recommendations contained in the report. *See* N.T. at 103. Therefore, Dr. LaPorte testified that, regardless of the scope or form of the custodial inquiry sought by Luzerne CCP, in drafting the 2013 Fremont Report, Dr. Fremont needed to employ multiple methods to arrive at his conclusions, discuss the bases for the report's recommendations, and note the report's limitations. *See* N.T. at 124-25. Dr. LaPorte opined that Dr. Fremont's failure to do these things represented ethics code violations and deviations from the acceptable prevailing standards of psychological practice. *See* N.T. at 124-26.

Attorney Michael Pendolphi testified on Dr. Fremont's behalf at the hearing as an expert in family law.[18] *See* N.T. at 170-92. Attorney Pendolphi explained that the 1915 rules of the Pennsylvania Rules of Civil Procedure govern child custody actions. *See* N.T. at 178. Specifically, Attorney Pendolphi explained that Pennsylvania Rule of Civil Procedure 1915.8 authorizes courts to order the parties or a child involved in a child custody matter to undergo a physical or mental

[18] Attorney Pendolphi received a bachelor's degree from the University of Scranton in 1987 and a juris doctor degree from Widener University School of Law in 1991. *See* N.T. at 171. He has been a licensed attorney since 1991, and approximately 90% of his practice over the course of his 28-year legal career has been family law. *See* N.T. at 171. Attorney Pendolphi was offered and certified to testify as an expert in family law in this matter without objection. *See* N.T. at 175.

examination, and Pennsylvania Rule of Civil Procedure No. 1915.18 promulgates the form a court must substantially follow when ordering such a physical or mental examination in a child custody matter. *See* N.T. at 178. Attorney Pendolphi opined that, because Judge Hughes did not employ the Pennsylvania Rule of Civil Procedure No. 1915.18 form in ordering Dr. Fremont to evaluate Mother, Father, and the Children in the instant child custody matter, Luzerne CCP did not actually order Dr. Fremont to conduct a full, formal comprehensive child custody evaluation and issue a corresponding formal report thereon. *See* N.T. at 178-79, 185-86 & 191.

Dr. Fremont testified on his own behalf before the hearing officer. *See* N.T. at 192-220. Dr. Fremont testified that he is a licensed psychologist who has maintained a solo practice in general psychology treating children and adolescents for the past 40 years.[19] *See* N.T. at 193-95. Dr. Fremont explained that he has been doing multiple child custody evaluations for Luzerne CCP per month since 2012. *See* N.T. at 196. Regarding the instant matter, Dr. Fremont explained that Judge Hughes called him on the telephone to request his input with the Child Custody Case. *See* N.T. at 198. Dr. Fremont testified that, during their telephone call, Judge Hughes explained that custody was already settled in the matter in that Father had primary physical custody of the Children and Mother had supervised visitation rights. *See* N.T. at 199. Dr. Fremont explained that Judge Hughes reviewed Mother's history and asked him to look at the case, to which request Dr. Fremont agreed. *See* N.T. at 199. Dr. Fremont further testified that Judge Hughes telephoned him a second time

---

[19] Dr. Fremont received a bachelor's degree from Temple University in 1970, a degree in counseling psychology from the University of Maryland in 1972, and a Ph.D. from Penn State University in 1982. *See* N.T. at 193. He was on the full-time faculty of the College of Misericordia for four years and has also taught at various other area universities throughout the years. *See* N.T. at 193.

14

and urged him to review the matter quickly, not at his usual measured pace, as the matter was then before the court. *See* N.T. at 199.

Dr. Fremont testified that he understood the June 2013 Order to be a memorialization of Judge Hughes' request during their telephone conversations that Dr. Fremont simply speak with the parties and report back to the court regarding the current Family dynamics and what would be best for the Children in terms of custodial status. *See* N.T. at 202-03. Dr. Fremont explained that he accordingly met with Mother, Father, and the Children, and discussed the matter further with two collateral sources: Attorney Bellino and Mother's counselor. *See* N.T. at 203-11. Dr. Fremont testified that, after this investigation, he wrote the 2013 Fremont Report, in which he noted that he did not have the opportunity to review Mother's past medical records because time was of the essence. *See* N.T. at 211 & 214. In the 2013 Fremont Report, Dr. Fremont recommended that Mother seek psychological treatment to diagnose her issues. *See* N.T. at 214-15. Additionally, in his report, Dr. Fremont made further specific custodial recommendations based on the best interests of the Children regarding the continuation of Mother's supervised visitation. *See* N.T. at 214. Dr. Fremont ultimately testified that he disagreed with Dr. LaPorte's characterization that the June 2013 Order required him to conduct a full child custody evaluation and draft a corresponding report. *See* N.T. at 219.

On November 21, 2019, the hearing examiner issued the Proposed Adjudication and Order (Proposed Adjudication) that found Dr. Fremont in violation of the Act as to all three counts of the OTSC and recommended that he be reprimanded, receive a $1,000 civil fine, and be required to complete 15 hours of approved continuing education pertaining to child custody evaluations. *See* Proposed Adjudication, S.R.R. at 75b-106b. Thereafter, on December 4, 2019, the

15

Board issued a Notice of Intent to Review and invited the parties to brief exceptions to the Proposed Adjudication, which the parties accordingly did. *See* Notice of Intent to Review filed December 4, 2019, S.R.R. at 107b-08b; Respondent Dr. Jeffrey Fremont's Brief on Exceptions to Hearing Examiner's Report and Recommendation of November 24, 2019, filed December 23, 2019, S.R.R. at 109b-27b; Commonwealth's Brief Opposing Exceptions filed January 10, 2020, S.R.R. at 128b-36b.

On June 24, 2020, the Board issued the Final Adjudication. *See generally* Final Adjudication; S.R.R. at 137b-65b. Based on the evidence presented at the hearing, the Board made the following relevant findings of fact:[20]

> 49. [Dr. Fremont] did not utilize multiple methods of assessment for his evaluation, such as psychological testing, observations with the [C]hildren, and/or review of the medical records, psychological treatment records, school records, etc. prior to making the recommendations set forth in his August 1, 2013 report.
>
> 50. [Dr. Fremont] did not identify any sources of information other than his interviews with [Mother], [Father], and their children when he formulated the recommendations set forth in his August 1, 2013 report.
>
> 51. [Dr. Fremont's] recommendation that "all visitation for the present time and foreseeable future, should be supervised by an experienced professional in the mental health area" was not based on any findings that are articulated in his report.

---

[20] As this Court has explained: "A professional licensing board may use a hearing examiner to take evidence, but the ultimate fact finder is the board." *Bentley v. Bureau of Pro. & Occupational Affs., State Bd. of Cosmetology*, 179 A.3d 1196, 1201 (Pa. Cmwlth. 2018).

52. [Dr. Fremont's] recommendations regarding custody and visitation were based entirely on "the interviews" he conducted with [Mother], [Father] and their children; his chart does not address issues such as parenting skills or the needs of the [C]hildren.

53. When recommendations as to custody or visitation are made by a psychologist, the recommendations must be based on reliable methods; it is incumbent on the psychologist to connect the data, the underlying assumptions and information gathered, to the recommendations that are made.

54. [Dr. Fremont] failed to conform to the standards of acceptable and prevailing psychological practice by failing to conduct a proper evaluation as specified by the APA's *Guidelines for Child Custody Evaluations in Family Law Proceedings*, [S]ections 3, 10, and 13.

55. [Dr. Fremont] failed to conform to the standards of acceptable and prevailing psychological practice by failing to acknowledge the limitations of the information he gathered and/or limit or qualify his conclusions/recommendations as required by [S]ection 9.01 of the APA's Ethical Principles of Psychologists and Code of Conduct.

56. [Dr. Fremont] failed to conform to standards of acceptable and prevailing psychological practice by making a specific recommendation regarding custody and visitation without articulating the basis for his recommendations and without noting limitations in the data he collected or in his conclusions/recommendation as required by [S]ections 10 and 13 of the APA's *Guidelines for Child Custody Evaluations in Family Law Proceedings*, and [S]ection 9.01 of the APA's Ethical Principles of Psychologists and Code of Conduct.

57. By preparing an evaluation in a custody proceeding that made recommendations to a court regarding custody

and visitation, [Dr. Fremont] conducted a custody evaluation for the [C]hildren of [Mother] and [Father].

Final Adjudication at 12-14, F.F. 49-57 (internal record citations omitted); S.R.R. at 149b-51b.

The Board declined to impose disciplinary sanctions against Dr. Fremont based on the allegations of violations of Ethical Principle 3(e) contained in OTSC Counts One and Two, and instead dismissed those two counts. *See* Final Adjudication at 15, Conclusions of Law (C.L.) 3, and at 17-18 & 26-28; S.R.R. at 152b, 154b-55b & 163b-65b. Regarding Count Three, however, based on the above facts, the Board found that Dr. Fremont violated Section 8(a)(11) of the Act by failing to conform to the standards of acceptable psychological practice in conducting his evaluation of the Family and in preparing the 2013 Fremont Report in connection with the Child Custody Case. *See* Final Adjudication at 15, C.L. 15, and at 18-24 & 26-28; S.R.R. at 152b, 155b-61b & 163b-65b. Regarding the sanction imposed, the Final Adjudication declined to follow the suggestion of the Proposed Adjudication to impose a reprimand and $1,000 civil penalty, and instead required only that Dr. Fremont complete 15 hours of approved continuing education that address the standards of acceptable and prevailing psychological practice in performing evaluations and making custody and/or visitation recommendations in child custody proceedings. *See* Final Adjudication at 24-28; S.R.R. at 161b-65b. This appeal followed.

## II. Issues

On appeal,[21] Dr. Fremont first claims that the Board erred by determining that he failed to conform to the standards of acceptable and prevailing psychological practice regarding the 2013 Fremont Report because Luzerne CCP did not order him to perform a child custody evaluation in this matter. *See* Dr. Fremont Br. at 8-21. Specifically, Dr. Fremont argues that Judge Hughes' June 2013 Order did not comport with the requirements of Pennsylvania Rule of Civil Procedure No. 1915.18 regarding the requirements for order evaluations in child custody matters. *See id.* at 8. Dr. Fremont argues that the June 2013 Order instead was confined to a simple request that Dr. Fremont determine whether Mother should be recommended for counseling and whether the current custody arrangement of permanent physical custody of the Children with Father and supervised visitation with the Children for Mother should continue, which determination did not require a full, formal child custody evaluation. *See id.* Dr. Fremont therefore argues that the Board's determination that the June 2013 Order required a full child custody evaluation that comported with the standards of acceptable and prevailing psychological practice lacked substantial evidence. *See id.* at 9-21.

Secondly, Dr. Fremont makes a constitutional challenge claiming that the required application of the APA Guidelines violates the non-delegation doctrine. *See* Dr. Fremont Br. at 21-23. Dr. Fremont argues that the Code of Ethics and the APA Guidelines that require psychologists to adhere to APA Standards and

---

[21] "An adjudication made by the Board must be affirmed on appeal unless constitutional rights have been violated, an error of law has been made, rules of administrative procedure have been violated or a finding of fact necessary to support the adjudication is not supported by substantial evidence." *Grossman v. State Bd. of Psychology*, 825 A.2d 748, 755 n.5 (Pa. Cmwlth. 2003).

19

Guidelines does not account for changes in the APA Guidelines after 2012, when the Legislature adopted the Code of Ethics. *See id.* at 23.

### III. Discussion

**A.** *Whether Luzerne CCP ordered Dr. Fremont to forward a full child custody evaluation.*

Dr. Fremont bases his argument that he was not ordered by Judge Hughes to perform a child custody evaluation, in part, on the expert testimony of Attorney Pendolphi. *See* Dr. Fremont Br. at 8-20. Attorney Pendolphi, in turn, bases his conclusion that Judge Hughes did not order Dr. Fremont to conduct a child custody evaluation on the failure of the June 2013 Order to comply with the language of Pennsylvania Rules of Civil Procedure Nos. 1915.8 and 1915.18, which failure Attorney Pendolphi found made it "basically impractical" for Dr. Fremont to comply with Judge Hughes' order. N.T. at 178, R.R. at 282.

The Board stated that it was "not impressed or persuaded by [Attorney Pendolphi's] testimony." Final Adjudication at 20, S.R.R. at 157b. The Board first noted that, while he may be versed in family law, Attorney Pendolphi is not a licensed psychologist bound by the standards of acceptable and prevailing psychological practice. *See id.* Further, the Board noted that the Rules of Civil Procedure do not apply to licensed psychologists, and thus are irrelevant to a determination of whether Dr. Fremont adhered to the standards of acceptable and prevailing psychological practice in conducting child custody evaluations and reports. *See id.* The Board found that, regardless of Judge Hughes' compliance or noncompliance with Pennsylvania Rules of Civil Procedure Nos. 1915.8 and 1915.18, the language of the June 2013 Order speaks for itself in terms of the evaluation requested of Dr. Fremont by Luzerne CCP. *See* Final Adjudication at 20.

20

The Board noted particularly that the following paragraphs of the June 2013 Order contained the court's request to Dr. Fremont:

> 5. [Mother], [Father], and the two minor children [J] and [M] are all directed to contact the office of [Dr. Fremont], 1264 Wyoming Avenue, Kingston, PA 18704 for the purpose of allowing Dr. Freemont [sic] to complete a full evaluation.
>
> 6. Upon completion of this evaluation, Dr. Fremont shall provide the [c]ourt with suggestions as to the partial custody periods currently provided for [Mother], and recommendations as to whether or not continued counseling of any or all the parties listed above would be in the best interests of the [C]hildren.

June 2013 Order at 1, R.R. at 205. The Board observed that the June 2013 Order called for Dr. Fremont to conduct a "full evaluation" and thereafter provide suggestions as to the "partial custody periods" in place for Mother with regard to the Children. *See* Final Adjudication at 20, S.R.R. at 157b. The Board then stated that, "[w]hen a psychologist is directed by a court to make a recommendation as to custody in a custody proceeding, the psychologist is being asked to complete a custody evaluation." Final Adjudication at 20-21, S.R.R. at 157b-58b. Ultimately, the Board concluded that the June 2013 Order directed Dr. Fremont to conduct a custody recommendation in a child custody proceeding. *See* Final Adjudication at 20-21, S.R.R. at 157b-58b.

We find no error in the Board's determination that the June 2013 Order directed Dr. Fremont to conduct a custody evaluation. Initially, we agree that the Pennsylvania Rules of Civil Procedure do not apply to psychologists and, therefore, the question of Judge Hughes' compliance therewith is irrelevant to whether Dr. Fremont met his professional responsibility to adhere to standards of acceptable and

21

prevailing psychological practice in conducting/preparing an ordered evaluation/report in a child custody dispute. *See* Final Adjudication at 20, S.R.R. at 157b. Accordingly, regardless of Judge Hughes' compliance or noncompliance with Pennsylvania Rule of Civil Procedure No. 1915.18, we find that the express language of the June 2013 Order clearly directed Dr. Fremont to provide a "full evaluation" and expressly sought suggestions and guidance as to the continuation of the Family's current custody arrangement. That Luzerne CCP requested Dr. Fremont to conduct the evaluations with haste did not transform the court's express request from a "full evaluation" to some lesser evaluation that did not require Dr. Fremont, as a licensed psychologist, to comply with the standards of acceptable and prevailing psychological practice.

An examination of Dr. Fremont's report itself illustrates that Dr. Fremont understood the June 2013 Order directed him to conduct a child custody evaluation. In addition to suggestions that Mother seek a psychological assessment, Dr. Fremont's report included child custody recommendations: first, that Mother's visitation should remain supervised for the present and foreseeable future, and second, that Father should maintain his current status as primary physical guardian of the Children. Simply put, these recommendations represent the conclusions of a child custody evaluation and thus required compliance with the standards of acceptable and prevailing psychological practice. *See* Final Adjudication at 14 & 15, F.F. 57 & C.L. 4. The fact that Dr. Fremont's custody recommendations did not recommend changes to the then-existing custody arrangement does not mean the recommendations were somehow not, or in any way less than, actual child custody recommendations. *See* Final Adjudication at 14 & 15, F.F. 57 & C.L. 4.

22

**B.** *Failure to comply with the standards of acceptable and prevailing psychological practice.*

We further find no error in the Board's determination that substantial evidence existed to support the determination that Dr. Fremont failed to comply with the standards of acceptable and prevailing psychological practice. The uncontroverted testimony of the psychology expert, Dr. LaPorte,[22] illustrated that Dr. Fremont failed to comply with the standards of acceptable and prevailing psychological practice in preparing the 2013 Fremont Report.[23] Dr. LaPorte testified that to properly evaluate parties and report child custody recommendations in child custody matters, a psychologist must: (1) employ multiple methods to arrive at conclusions; (2) base a child custody report on sound psychological data; (3) note the needs of the children in question and the parenting capacity of the parents to meet those needs; and (4) substantiate the findings of the report by stating the bases of the findings therein. Further, Dr. LaPorte testified that child custody reports must connect the recommendations to underlying assumptions and gathered information.

---

[22] We agree with the Board that this case does not present a true "battle of the experts." *See* Board's Br. at 16. Attorney Pendolphi testified as an expert in family law. *See* Final Adjudication at 20, S.R.R. at 157b. While testimony from a family law expert may be useful in a proceeding regarding whether Judge Hughes erred by ordering a custody evaluation in a child custody case without complying with Pennsylvania Rule of Civil Procedure No. 1915.18, such testimony does not supersede the testimony of Dr. LaPorte, an expert in psychology, regarding the requirements and obligations of psychologists regarding child custody evaluations and reports thereon in child custody matters.

[23] While Section 8(a)(11) of the Act does not require compliance with Sections 3, 10, and 13 of the APA's Guidelines for Child Custody Evaluations in Family Law Proceedings and the Ethical Principles of Psychologists and Code of Ethical Conduct Standard No. 9.01, and noncompliance with the same is not legislatively required to find a violation of Section 8(a)(11), Dr. LaPorte's testimony makes clear that over the course of the past three decades, these guidelines, ethical principles, and code of conduct have become the standards of acceptable and prevailing psychological practice regarding child custody evaluations and reports. *See* Final Adjudication at 22-23; S.R.R. at 159b-60b.

23

Dr. LaPorte testified that Dr. Fremont's report failed to meet these minimum requirements and was further deficient in that it included only minimal evaluation and did not state the limitations of the information gathered. Dr. LaPorte testified that Dr. Fremont's report was deficient for the additional fact that Dr. Fremont did not: (1) interview other parties beyond the Family; (2) observe the parents with the Children; (3) contact collateral sources; or (4) perform psychological testing of the parties. Ultimately, Dr. LaPorte testified that Dr. Fremont did not conduct his custody evaluation or author his report within the acceptable prevailing standards of psychological practice.

The Board agreed with Dr. LaPorte's assessment that, in conducting his evaluation and drafting his report to Luzerne CCP, Dr. Fremont failed to comply with the standards of acceptable psychological practice. *See* Final Adjudication at 23-24, S.R.R. at 160b-61b. The Board noted that, as part of his court-ordered evaluation, Dr. Fremont had but two brief sessions with Mother, did not utilize multiple methods of assessment for his evaluation, did not identify any sources of information employed in the formulation of his child custody recommendations beyond the interviews he conducted with the Family, did not address the issues of the needs of the Children or the parenting skills of Mother or Father, and did not base his recommendations on any findings articulated in his report. *See* Final Adjudication at 23, S.R.R. at 160b. The Board further noted Dr. Fremont's failure to connect the data gathered and the underlying assumptions to the recommendations of the report and failure to acknowledge the limitations of, or otherwise limit or qualify, the conclusions contained in the report. *See* Final Adjudication at 23-24, S.R.R. at 160b-61b.

24

We find no error in either the Board's assessment of the evidence or conclusions based thereon.[24] We further note that, in imposing the 15 hours of continuing education relating to child custody evaluations, the Board discussed authorized sanctions, reviewed the sanctions requested by the Bureau and suggested by the Proposed Adjudication, and took into account, as mitigating factors, Dr. Fremont's genuine belief that he was complying with the June 2013 Order and the fact that no evidence existed that Dr. Fremont deliberately sought to evade or circumvent any professional responsibilities, particularly considering Dr. Fremont's prior experience with both Judge Hughes and the Family. *See* Final Adjudication at 24-26, S.R.R. at 161b-63b.[25]

To the extent Dr. Fremont argues that the fact that Dr. LaPorte stated that he had no issue with Dr. Fremont's custodial conclusions somehow exonerates Dr. Fremont's failure to comply with the standards of acceptable psychological practice, we do not agree. *See* Dr. Fremont's Br. at 20-21. We agree with the Board

---

[24] *See Grossman*, 825 A.2d at 761 ("It is not this Court's function to judge the weight and credibility of evidence before an administrative agency.").

[25] We also note that the certified agency record contains a Consent Agreement and Order adopted and approved on August 7, 2013 (Consent Agreement), wherein the Board imposed on Dr. Fremont a 9-month license suspension, a public reprimand, and a $3,000 civil penalty, and required Dr. Fremont to complete an aggregate total of 30 hours of remedial education in patient record keeping and child custody law and ethics, based upon 2010 conduct for which the Board alleged, *inter alia*, that Dr. Fremont "fail[ed] to conform to the standards of acceptable and prevailing psychological practice by failing to make recommendations based on information and techniques sufficient to substantiate his findings" in violation of Section 8(a)(11) of the Act, 63 P.S. § 1208(a)(11). *See* Consent Agreement, Certified Record Item 1, at 6, 9-17. While not directly relevant in assessing Dr. Fremont's instant conduct, and although entered into without an admission of guilt or wrongdoing for purposes of later proceedings, *see* Consent Agreement at 7, the Consent Agreement is admissible in future Board actions, *see* Consent Agreement at 18, and illustrates even without an admission of guilt that Dr. Fremont should have understood the necessity of complying with the standards of acceptable prevailing psychological practice in conducting child custody evaluations at the time of the events of the instant matter.

that Dr. Fremont's custodial recommendations themselves are irrelevant to the matter at hand. The issue before the Court is not the correctness of Dr. Fremont's custodial recommendations, but whether Dr. Fremont complied with the acceptable prevailing standards of psychological practice in making the recommendations. *See* Final Adjudication at 21-24; S.R.R. at 158b-61b. Dr. Fremont's recommendations themselves, and whether other psychologists would or would not agree with those recommendations, is beside the matter before the Court.

## C. *The constitutional claim.*

We need not address Dr. Fremont's constitutional claim that Ethical Principle 3(e), the violation of which Count One and Count Two depend upon, violates the principle that the Pennsylvania Constitution does not allow the General Assembly to delegate legislative functions to third parties.[26] *See* Dr. Fremont's Br. at 21-23. OTSC Counts One and Two concerned alleged violations of Ethical Principle 3(e) and the APA Guidelines, which in turn rely on Ethical Principle 3(e). However, the Board dismissed both Count One and Count Two and instead determined this matter on Count Three alone, which alleged a violation of Section 8(a)(11) of the Act, 63 P.S. § 1208(a)(11), by failing to conform to the standards of acceptable and prevailing psychological practice. Section 8(a)(11) of the Act does not legislatively require adherence to the APA Guidelines or require assessment of the APA Guidelines to determine the acceptable standards of prevailing psychological practice. Thus, the constitutional claim is moot as to Counts One and Two and inapplicable as to Count Three.

---

[26] See *425 Property Association of Alpha Chi Rho, Inc. v. State College Borough Zoning Hearing Board*, 223 A.3d 300, 313 n.9 (Pa. Cmwlth. 2019), *appeal denied*, 236 A.3d 1047 (Pa. 2020), for a detailed discussion of the non-delegation principle in relation to *Protz v. Workers' Compensation Appeal Board (Derry Area School Dist.)*, 161 A.3d 827 (Pa. 2017).

## IV. Conclusion

For the above reasons, we affirm the Final Adjudication.


_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeff Fremont, Ph.D.,
        Petitioner      :
                             :
       v.                :
                             :
Bureau of Professional and    :
Occupational Affairs, State     :
Board of Psychology,         :   No. 678 C.D. 2020
        Respondent   :

## O R D E R

AND NOW, this 17th day of June, 2021, the June 24, 2020 order of the Bureau of Professional and Occupational Affairs, State Board of Psychology is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge